**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| C.G., a minor, by and through her next friend and mother, NICOLE GEORGAS, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No.: 25-CV-13406 |
| v. | ) ) | Judge Rebecca Pallmeyer |
| DEERFIELD PUBLIC SCHOOLS DISTRICT 109, et al., | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**INTRODUCTION**………………………………………………………………….….1

**FACTUAL BACKGROUND**………………………………………………….......3

**LEGAL STANDARD**………………………………………………………………5

**ARGUMENT**………………………………………………………………………..6

    I.     **Plaintiff Lacks Standing to Seek Preliminary Injunctive Relief**………………......6

    II.    **Plaintiff Has Not Made a Strong Showing of a Likelihood of Success on the Merits of Any of Her Claims**………………………………………………...7

        *A. The District's Policy Does Not Violate the Equal Protection Clause Because It Is Inclusive and Applies Equally to All Students*………………...8

        *B. Plaintiff's Title IX Claim Fails Because the District's Policy Does Not Discriminate Based on Sex*………………………………………..11

        *C. Plaintiff's First Amendment Claim Fails Because There Has Been No Deprivation and No Retaliatory Motive*……………………………...13

    III.   **Plaintiff Has Made No Showing of Irreparable Harm Requiring Immediate Intervention by the Court**..………………………………………15

    IV.   **Plaintiff Has Made No Showing That Her Legal Remedy Is Inadequate**……….18

    V.    **Even If Plaintiff Could Establish the Threshold Requirements for a TRO or Preliminary Injunction, the Balance of Harms and the Public Interest Weigh Heavily Against Injunctive Relief**………………………………………19

**CONCLUSION**………………………………………………………………………20

# TABLE OF CASES

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville,*
   75 F.4th 760 (7th Cir. 2023)…………………………………………….9, 10, 11, 12, 13, 18, 20

*Bethel Sch. Dist. No. 403 v. Fraser,*
   478 U.S. 675 (1986)…………………………………………………………………...13

*Brandt v. Bd. of Educ. of City of Chicago,*
   480 F.3d 460 (7th Cir. 2007)…………………………….……………………………15

*Carney v. Adams,*
   592 U.S. 53 (2020)…………………………………………………………………...6

*Cassell v. Snyders,*
   990 F.3d 539 (7th Cir. 2021)…………………………………………………………5

*City of Cleburne v. Cleburne Living Ctr.,*
   473 U.S. 432 (1985)………………………………………………………………….8

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983)…………………………………………………………………6, 7

*Corales v. Bennett,*
   567 F.3d 554 (9th Cir. 2009)………………………………………………………..14

*DISH Network LLC v. Cox Media Grp., LLC,*
   No. 20 C 570, 2020 WL 4053604 (N.D. Ill. July 20, 2020)……………………………..17

*D.P. by A.B. v. Mukwonago Area Sch. Dist.,*
   140 F.4th 826 (7th Cir. 2025)……………………………………………………….12

*D.P. by A.B v. Mukwonago Area Sch. Dist.,*
   No. 23-2568, 2025 WL 1794428 (7th Cir. June 30, 2025)………………………..10, 12

*FCC v. Beach Commc'ns, Inc.,*
   508 U.S. 307 (1993)………………………………………………………………...11

*F.F. by Fisher v. Valley View Cmty. Unit Sch. Dist. 365U,*
   No. 1:25-cv-09112, 2025 WL 2785372 (N.D. Ill. Sept. 30, 2025)…2, 3, 9, 10, 11, 13, 18

*GEFT Outdoors, LLC v. City of Westfield,*
   922 F.3d 357 (7th Cir. 2019)…………………………………………………………5

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.,*
   549 F.3d 1079 (7th Cir. 2008)………………………………………………………18

*Gray v. Orr,*
 4 F. Supp. 3d 984 (N.D. Ill. 2013)…………………………………………………………...5

*Ill. Republican Party v. Pritzker*,
 973 F. 3d 760 (7th Cir. 2020)…………………………………………………………………7

*Lujan v. Defs. of Wildlife,*
 504 U.S. 555 (1992)……………………………………………………………………….6

*Mazurek v. Armstrong*,
 520 U.S. 968 (1997)……………………………………………………………………….5

*Memphis Cmty. Sch. Dist. v. Stachura*,
 477 U.S. 299 (1986)……………………………………………………………………...18

*Michigan v. U.S. Army Corps. of Eng'rs*,
 667 F.3d 765 (7th Cir. 2011)………………………………………………………15, 17

*Minocqua Brewing Co. v. Hess*,
 No. 25-2092, 2025 WL 3292188 (7th Cir. Nov. 26, 2025)……………………………13

*Murthy v. Missouri*,
 603 U.S. 43 (2024)………………………………………………………………………...6

*N.J. by Jacob v. Sonnabend*,
 37 F.4th 412 (7th Cir. 2022)……………………………………………………………...14

*Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. # 204*,
 523 F.3d 668 (7th Cir. 2008)……………………………………………………………..14

*Orr v. Shicker,*
 953 F.3d 490 (7th Cir. 2020)………………………………………………………………5

*Park Ridge Sports, Inc. v. Park Ridge Travel Falcons*,
 No. 20 C 2244, 2020 WL 6265133 (N.D. Ill. Aug. 20, 2020)…………………………...16

*Redbox Automated Retail, LLC v. Xpress Retail LLC*,
 310 F. Supp. 3d 949 (N.D. Ill. 2018)……………………………………………………17

*Reid L. v. Ill. State Bd. of Educ.*,
 289 F.3d 1009 (7th Cir. 2002)……………………………………………………………16

*Sashital v. Seva Beauty, LLC*,
 No. 20 C 4692, 2021 WL 1222895 (N.D. Ill. Mar. 31, 2021)…………………………....17

*Second City Music, Inc. v. City of Chicago,*
    333 F.3d 846 (7th Cir. 2003)…………………………………………………………...7, 17

*Simic v. City of Chicago,*
    851 F.3d 734 (7th Cir. 2017)………………………………………………………….6, 7

*Springer v. Durflinger,*
    No. 03-1200, 2006 WL 8445054 (C.D. Ill. Apr. 3, 2006)………………………………..15

*Students & Parents for Privacy v. U.S. Dep't of Educ.,*
    No. 16-cv-4945, 2017 WL 6629520 (N.D. Ill. Dec. 29, 2017)…………………………..12

*Tinker v. Des Moines Ind. Cmty. Sch. Dist.,*
    393 U.S. 503 (1969)……………………………………………………………………13, 14

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021)…………………………………………………………………….6

*Turnell v. CentiMark Corp.,*
    796 F.3d 656 (7th Cir. 2015)…………………………………………………………...5, 16

*Ty, Inc. v. Jones Grp., Inc.,*
    237 F.3d 891 (7th Cir. 2001)…………………………………………………………..17

*U.S. v. Skrmetti,*
    605 U.S. 495 (2025)……………………………………………………………………10, 11

*U.S. v. Virginia,*
    518 U.S. 515 (1996)…………………………………………………………………….8

*Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,*
    858 F.3d 1034 (7th Cir. 2017)………………………………………9, 10, 11, 12, 13, 20

**INTRODUCTION**

In February 2025, Deerfield Public Schools District 109 (the "District"), acting pursuant to its Equal Educational Opportunity Policy (the "Policy"), as well as State and Federal law, approved a request by a transgender seventh-grade student ("Student B") to use the girls' locker room to change for her physical education ("PE") class at Alan B. Shepard Middle School ("SMS"). Students who initially expressed concern were encouraged to use enclosed private stalls within the locker room or other designated changing facilities if they felt uncomfortable changing in the main area of the locker room. Once Student B began using the girls' locker room for PE, Plaintiff C.G. did not change for PE again, never once changing in Student B's presence. As an accommodation, the District allowed C.G. not to change for PE for the remainder of the 2024-25 school year and during the 2025-26 school year. Neither C.G. nor any other student was ever forced, required, or directed to change in front of another student or adult at SMS. On October 14, 2025, C.G. was withdrawn from SMS by her mother.

On November 1, 2025, Plaintiff C.G., by her mother, Nicole Georgas ("Georgas"), filed the present lawsuit against the District and individual school administrators Joanna Ford ("Ford") and Cathy Van Treese ("Van Treese") (collectively, "Defendants"). (*See* Doc. 1). Plaintiff asserts various state law tort claims and alleges Defendants' Policy and actions violated the Fourteenth Amendment's Equal Protection Clause (the "Clause"), Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX"), and the First Amendment. (*Id.*). Plaintiff now seeks a temporary restraining order ("TRO") and preliminary injunction enjoining Defendants from enforcing the District's Policy based on her federal law claims. (*See* Doc. 18).

As an initial matter, Plaintiff lacks standing to pursue the requested injunctive relief because she is no longer a student at SMS and thus faces no real and immediate threat of harm

caused by the District's Policy. Standing issues aside, Plaintiff has not and cannot meet her burden in establishing any of the requirements entitling her to such relief. She cannot show a likelihood of success on the merits of her claims under the Clause and Title IX because the District's Policy, which applies equally to *all* students, does not discriminate against students based on their sex. Similarly, Plaintiff cannot show a likelihood of success on her First Amendment retaliation claim because, as a student in a public school, she cannot show Defendants deprived her of her limited free speech rights or that any subsequent actions were motivated by her exercise of those rights.

Moreover, Plaintiff cannot possibly suffer future irreparable harm caused by the alleged trauma of seeing or being seen by Student B in the locker room because she no longer attends SMS or uses the locker room. Plaintiff now claims the harm she will suffer results from not attending SMS and missing her friends. These alleged harms, however, are not the proximate result of any District action, but rather her mother's decision to pull her out of school. In addition, the nine-month lapse between the underlying events, initial threat to sue, and the present request for injunctive relief undermines any argument the relief is urgently needed. Finally, Plaintiff has not and cannot show her legal remedies are inadequate. She is seeking, and can obtain, monetary damages for the alleged emotional and psychological harm she claims for Defendants' alleged violations of the Fourteenth Amendment, Title IX, and the First Amendment.

Plaintiff's legal theories are not novel. Indeed, Judge Coleman recently addressed and rejected identical arguments in *F.F. by Fisher v. Valley View Community Unit School District 365U,* No. 1:25-cv-09112, 2025 WL 2785372 (N.D. Ill. Sept. 30, 2025) ("*Valley View Community*"). There, F.F., a student at Bolingbrook High School, alleged the school district's policy violated the Equal Protection Clause and Title IX by allowing transgender female students access to "female-only" spaces such as locker rooms and restrooms. *Id.* at *1. The plaintiff sought a preliminary

2

injunction premised upon identical arguments and similar facts as those alleged by Plaintiff C.G. in the present matter. *Id.* at *3-8. Judge Coleman summarily rejected plaintiff's arguments, finding the plaintiff failed to demonstrate any one of the threshold requirements for a preliminary injunction. *Id.* Plaintiff C.G.'s Motion fails for the same reasons and more.

## FACTUAL BACKGROUND

The District's written Policy provides that no student shall be denied access to educational programs, activities, or services based on, inter alia, gender identity. (*See* Ex. 1, Declaration of Michael Simeck ["Simeck Decl."] ¶ 7). Consistent with guidance from the Illinois State Board of Education ("ISBE") and the Illinois Department of Human Rights ("IDHR"), the District's Policy allows students to use locker room and bathroom facilities that align with their gender identity. (*Id.* ¶¶ 4, 7). It provides private changing stalls within the locker rooms and permits students who feel uncomfortable changing in front of other students to utilize other facilities. (*See* Ex. 2, Declaration of Cathy Van Treese ["Van Treese Decl."] ¶¶ 13, 16, 17).

In January 2025, the parents of a female transgender student requested their daughter be allowed to start using the girls' bathrooms and locker room. (Simeck Decl. ¶ 5). The District approved the request pursuant to its Policy as well as State and Federal law. (*Id.* ¶ 6). On February 6, 2025, Georgas emailed the school counselor indicating she understood Student B was using the girls' restroom and would also be allowed to use the girls' locker room. (*Id.* ¶ 8). The following day, SMS's principal informed Georgas the school's decision complied with the required laws and the District's Policy. (*Id.* ¶ 9). In response, Georgas indicated she would be filing a lawsuit. (*Id.*). Thereafter, Georgas adamantly refused to meet with administrators to discuss the situation. (*Id.*).

On February 24, 2025, some students created a disturbance in the locker room by refusing to change for PE class due to Student B's anticipated use of the girls' locker room. (*See* Ex. 3,

3

Declaration of Joanna Ford ["Ford Decl."] ¶¶ 9, 11]). Student B did not change in the locker room on that date, and no student received any discipline for refusing to change. (Van Treese Decl. ¶ 9). The following day, February 25, 2025, three staff members, including Van Treese and Ford, were present in the locker room at the start of C.G.'s PE period to respond to specific student concerns, avoid further disruption, and remind students about PE changing requirements and available private accommodations. (*Id.* ¶¶ 12, 17; Ford Decl. ¶ 13). Consistent with the District's standard practices, adult staff members regularly monitor locker rooms for safety purposes. (Simeck Decl. ¶ 11).

The administrators stood in a hallway near the locker room door and did not watch students change clothes nor require any student to change in their presence or the presence of other students, including Student B. (Van Treese Decl. ¶¶ 12, 18; Ford Decl. ¶¶ 13-15). Indeed, Student B did not even enter the locker room proper; she merely dropped off a bag in the cubbies near the door and exited the locker room. (Ford Decl. ¶ 15). Student B used the girls' locker room for the first time on February 26, 2025, changing in an enclosed private stall before quickly exiting the locker room to the gymnasium to wait for the start of PE class. (*Id.* ¶ 16; Van Treese Decl. ¶ 21). School administrators were again present at the entrance of the locker room to maintain order and control student traffic. (Van Treese Decl. ¶ 21; Ex. 3, Declaration of Ginger Logemann ["Logemann Decl."] ¶ 7). No student was ever forced, required, or directed to change in front of any other student or school administrator, including Ford and Van Treese, **at any time**. (Van Treese Decl. ¶¶ 18, 21; Ford Decl. ¶¶ 14, 15, 17, 18; Logemann Decl. ¶¶ 10-11).

A few students who refused to change on February 25 or February 26 were warned that their continued refusal to change clothes for PE class could result in a "minor infraction." (Van Treese Decl. ¶ 19; Ford Decl. ¶ 19). A minor infraction is simply a notation concerning a routine

violation of conduct rules, such as being tardy, using a cell phone to play games, violating the dress code, or talking back to an adult. (Van Treese Decl. ¶ 19; Ford Decl. ¶ 19). A few students received minor infractions, but C.G. was not one of them. (Van Treese Decl. ¶ 25). Instead, as an accommodation and to avoid further disruptions, the District permitted C.G. to attend her PE class without requiring her to change clothes during the rest of the 2024-25 school year and the 2025-26 school year. (Simeck Decl. ¶ 13).

## **LEGAL STANDARD**

The standards for issuing a TRO are identical to those for a preliminary injunction. *Gray v. Orr,* 4 F. Supp. 3d 984, 989 n.2 (N.D. Ill. 2013). Both are "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker,* 953 F.3d 490, 501 (7th Cir. 2020) (citation omitted). A "*clear showing*" is required. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). The party seeking such relief must demonstrate: (1) a likelihood of succeeding on the merits; (2) that there is no adequate remedy at law; and (3) that irreparable harm is likely in the absence of a preliminary injunction. *Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021). If the moving party "fails to meet any of these threshold requirements, the court must deny the injunction." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (citation omitted). Even if the moving party makes this threshold showing, courts must then consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the public interest. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015).

**ARGUMENT**

**I. Plaintiff Lacks Standing to Seek Preliminary Injunctive Relief.**

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). "The 'case or controversy' requirement is fundamental to the judiciary's proper role in our system of government." *Id.* (internal quotations omitted). The requirement that a litigant have standing to invoke the authority of a federal court "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). This means that a plaintiff must have a "personal stake" in the case. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). To establish such a personal stake, a plaintiff must show: (i) that she suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief. *Id.*

The party invoking federal jurisdiction bears the burden of demonstrating standing at the time she filed suit. *Id.* at 430-31; *Carney v. Adams*, 592 U.S. 53, 59 (2020). "[S]tanding is not dispensed in gross; rather plaintiffs must demonstrate standing . . . *for each form of relief that they seek, (for example, injunctive relief and damages)*." *TransUnion*, 594 U.S. at 431 (emphasis added). To establish the injury-in-fact element of standing in a case seeking prospective injunctive relief, "a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Here, Plaintiff filed suit on November 1, 2025, after voluntarily withdrawing from SMS on October 14, 2025. (Doc. 1 at ¶ 9). Because she is no longer a student, Plaintiff cannot establish that, as of the date of filing or thereafter, she was or is subject to the District's Policy and is now

faced with a "real and immediate" threat of future harm related to the District's Policy. Thus, even if Plaintiff has standing to pursue damages for alleged injuries occurring in the past, she cannot meet "the preconditions for asserting an injunctive claim in a federal forum." *City of Los Angeles*, 461 U.S. at 109; *see also Simic*, 851 F.3d at 738.

To the extent Plaintiff claims her standing rests on the harm of not attending SMS with her classmates, she cannot satisfy the second requirement for standing—causation. The District's Policy was not the cause of her alleged harms; rather, they are the direct result of Georgas's decision to withdraw C.G. from school. *See Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003) (self-inflicted wounds do not support injunctive relief). Thus, there is no "case" or "controversy" between the parties with respect to Plaintiff's request for a TRO and preliminary injunction, and the Motion should be denied on this basis alone.

Nonetheless, should the Court find Plaintiff has standing to pursue injunctive relief, her Motion still must be denied because Plaintiff cannot meet her burden in establishing the threshold requirements for a TRO or preliminary injunction. Even if she could, which Defendants deny, the balance of harms to the parties and public interest weigh heavily in favor of denying injunctive relief.

## II. Plaintiff Has Not Made a Strong Showing of a Likelihood of Success on the Merits of Any of Her Claims.

For a showing of likelihood of success on the merits, a plaintiff must show more than a "mere possibility of success." *Ill. Republican Party v. Pritzker*, 973 F. 3d 760, 762 (7th Cir. 2020). Rather, a plaintiff must make a "strong showing" that she will likely succeed on the merits of her claims. *Id*. Plaintiff has failed to make any such showing.

### A. The District's Policy Does Not Violate the Equal Protection Clause Because It Is Inclusive and Applies Equally to All Students.

The Clause mandates that individuals in similar circumstances be treated equally. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). Typically, state actions are presumed to be lawful and will be upheld if the classification is rationally related to a legitimate state interest. *Id.* at 440. For a sex-based classification, however, the state must prove an "exceedingly persuasive justification," demonstrating that the classification advances important governmental objectives and that the discriminatory methods are substantially related to achieving those objectives. *U.S. v. Virginia,* 518 U.S. 515, 531, 533 (1996) (internal citations omitted).

Plaintiff argues the District's Policy, which she claims "accommodates male students with non-conforming gender preferences in multi-use sex-segregated spaces," discriminates against "female students because it denies them the use of secure sex-segregated spaces free from intrusion by males." (Doc. 18 at *7). Plaintiff claims the District's Policy creates a sex-based classification by permitting transgender females to use female-only spaces based only on "self-declared preferences." (*Id.* at *9). This attempt to portray the District's Policy granting equal access to locker rooms and restrooms as a sex-based classification ignores the gender-inclusive nature of the actual policy and is directly refuted by the very cases Plaintiff relies upon.

As noted by Plaintiff, the District's Policy is consistent with the IDHR's gender-neutral guidance[1] that "[a] student must be permitted to access restrooms or bathrooms, locker rooms and changing rooms that align with their gender related identity[.]" (*See* Doc. 1 at ¶ 15; Doc. 18 at *14). Plaintiff's argument that the District's Policy and reliance on this guidance disproportionately harms "biological girls" is baseless and illogical since *all* students—regardless

---

[1] *See* IDHR, *Guidance on Protection of Students in Illinois* (https://dhr.illinois.gov/publications/guidance-re-illinois-students-1221.html).

of sex—are permitted to use the school facilities that align with their gender identity. (*See* Simeck Decl. ¶ 7). Specifically, the District's Policy indicates, in relevant part, that "[e]qual educational and extracurricular activities shall be available for *all* students without regard to . . . sex [and] gender identity[.]" (*Id.* (emphasis added)). The Policy further asserts:

> No student shall, based on sex, sexual orientation, or gender identity be denied equal access to programs, activities, services, or benefits or be limited in the exercise of any right, privilege, advantage, or denied equal access to educational and extracurricular programs and activities.

(*Id.*).

In *Valley View Community,* Judge Coleman found a similar gender-neutral policy did not constitute sex-based discrimination because, under the policy, "*ALL* students, regardless of gender, are permitted access to facilities that align with their gender identity." 2025 WL 2785372, at \*4 (emphasis in original). Accordingly, Judge Coleman determined the defendant's policy did not include any sex-based classification triggering heightened scrutiny. *Id.* Similarly, the District's Policy unequivocally does not include any sex-based classifications that would trigger the heightened scrutiny analysis found in *Whitaker* and *Martinsville.* Instead, it is inclusive of *all* students—including C.G. and other cisgender females, cisgender males, transgender males, and transgender females—guaranteeing all students equal access to accommodations.

Moreover, Plaintiff's reliance on the Seventh Circuit's decisions in *Whitaker* and *Martinsville* is unpersuasive and erroneous as both cases involved *exclusive* policies that required students to use the gender-specific restroom matching their birth certificates. *See generally, Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,* 858 F.3d 1034 (7th Cir. 2017); *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville,* 75 F.4th 760 (7th Cir. 2023). Although the school districts in those cases claimed their policies treated all students the same, the Seventh Circuit found transgender students who failed to conform to sex-based stereotypes associated with

their assigned sex at birth were treated differently. *Whitaker,* 858 F.3d at 1051-52; *Martinsville,* 75 F.4th at 772.

Here, unlike the exclusionary policies in *Whitaker* and *Martinsville,* the District's Policy is gender neutral and does not treat transgender students differently based on their transgender status. Instead, the District allows every student, regardless of sex, to utilize facilities consistent with their gender identity. The District's Policy simply does not include any sex-based classification that would trigger the heightened scrutiny analysis employed in *Whitaker* and *Martinsville.*

Moreover, recent Supreme Court and Seventh Circuit decisions have no bearing on the analysis. In *D.P. by A.B v. Mukwonago Area School District*, No. 23-2568, 2025 WL 1794428, at *1 (7th Cir. June 30, 2025), the Seventh Circuit granted a panel rehearing to consider overruling *Whittaker* and *Martinsville* in light of the Supreme Court's decision in *United States v. Skrmetti,* 605 U.S. 495 (2025). In *Skrmetti,* the Supreme Court determined a Tennessee law prohibiting certain medical treatments for transgender minors was not subject to heightened scrutiny because the law did not prohibit conduct for one sex that it permitted for the other. *Skrmetti,* 605 U.S. at 511. Instead, the Supreme Court held such classifications are subject to rational basis review. *Id.* at 510. However, as explained by Judge Coleman in *Valley View Community,* even if this new precedent calls into question whether policies that target transgender students are still subject to intermediate scrutiny, the likelihood of success on the merits analysis remains the same since Defendant's inclusive policy does not prohibit conduct for one sex that it permits for the others. 2025 WL 2785372, at *4-5.

Even if the Policy did prohibit conduct for one sex, the Policy would only be subject to rational basis review under *Skrmetti*. Under that standard, the Policy would be given even more deference than the heightened scrutiny applied in *Whittaker* and *Martinsville*. The more relaxed

rational basis inquiry requires a court to uphold a statutory classification so long as there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313 (1993). Where there exist "plausible reasons" for the relevant government action, the court's inquiry ends. *Skrmetti,* 605 U.S. at 522 (citation omitted). Such reasons clearly exist here. By implementing and following its Policy, the District ensures all students have equal access to educational facilities and accommodations in accordance with State and Federal law.

### B. Plaintiff's Title IX Claim Fails Because the District's Policy Does Not Discriminate Based on Sex.

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Plaintiff alleges "Defendants intentionally discriminate against female students by adopting and aggressively enforcing a policy that grants biological males unrestricted access to girls' locker rooms based solely on such male students' self-declared preferences[.]" (Doc. 18 at *10). Plaintiff further claims the District's Policy subjects C.G. and every other "female" student to "opposite-sex exposure, humiliation, and fear." (*Id.*). Plaintiff, again, fails to make a showing that Defendants engaged in discrimination on the basis of sex.

As addressed in § II(A), *supra,* Plaintiff has not shown she experienced any discrimination based on her sex. Consistent with State and Federal guidelines and laws, C.G.—like every other student—is allowed access to the locker room and bathroom that aligns with her gender identity. (*See* Simeck Decl. ¶ 7). No disparate treatment arises from this inclusive access. *See Valley View Cmty.*, 2025 WL 2785372, at *6 (no violation of Title IX where policy guaranteed all students equal rights under the statute.) Nonetheless, Plaintiff argues *Whitaker* and *Martinsville,* where

11

transgender students were discriminated against by their schools' policies denying them access to facilities aligning with their gender identity, should apply inversely here. (Doc. 18 at *10).

According to Plaintiff, C.G. and other "female" students face discrimination because the District's Policy forces them to share facilities with "biological males" based solely on "self-declared preferences"[2] and without objective criteria like medical documentation and "consistent female identity." (*Id.* at *10-11). Plaintiff's Title IX theory does not involve C.G.'s access to locker rooms and bathrooms, which is the same as every other District student, but instead focuses on her own privacy concerns. (Doc. 18, Ex. 1, C.G. Decl. ¶ 10 ("I do not want to be forced to share locker rooms or other private girls-only spaces with male students or to risk having *my* privacy violated again." (emphasis added)). However, such theories based on similar conjectural privacy concerns are regularly dismissed by courts. *See Whitaker,* 858 F.3d at 1052; *see also Students & Parents for Privacy v. U.S. Dep't of Educ.,* No. 16-cv-4945, 2017 WL 6629520, at *6 (N.D. Ill. Dec. 29, 2017).

Plaintiff further argues Defendants engaged in sex-based discrimination by forcing "female" students to share "intimate spaces with biological males," even though the "male student presented outwardly as male and offered no evidence of gender dysphoria, medical transition, or consistent female identify." (Doc. 18 at *10-11). The Seventh Circuit has found policies denying students access to facilities consistent with their gender identity can constitute sex-based discrimination under Title IX, particularly where such policies rely on sex-stereotyping or failing to account for a student's transgender status. *Whitaker,* 858 F.3d at 1048-50; *Martinsville,* 75 F.4th at 769-70. Specifically, the Seventh Circuit in *Martinsville* determined that a restroom policy

---

[2] Plaintiff's attempt to denigrate Student B's exercise of her constitutional and statutory rights as being grounded in mere "preferences" supposedly because Student B has not been diagnosed with a medical condition is offensive, and to boot was soundly rejected by the Seventh Circuit in its now-vacated decision in *D.P. by A.B. v. Mukwonago Area School District.* 140 F.4th 826, 833 (7th Cir. 2025), *vacated and reh'g granted*, 2025 WL 1794428 ("These slight differences do not undermine the district judge's conclusion that D.P is likely to succeed on her claims based on binding circuit precedent. Our decisions in *Whitaker* and *Martinsville* did not turn on the plaintiffs' ages, hormone treatments, or medical conditions.").

relying on biological sex to address "privacy concerns" for cisgender students violates Title IX because (i) a transgender student's presence in their gender affirming facility "did not threaten those privacy interests," and (ii) "gender-affirming access policies neither thwart rule enforcement nor increase the risk of misbehavior in bathrooms and locker rooms." *Martinsville,* 75 F.4th at 773-74.

Here, applying *Whitaker* and *Martinsville* inversely and allowing for disparate gender identification policies, as Plaintiff advocates, would lead to the precise unconstitutional scenario the Seventh Circuit rebuked in both cases—a ban on transgender students' access to facilities that align with their gender identity. *See Valley View Cmty.,* 2025 WL 2785372, at *6.

### C. Plaintiff's First Amendment Claim Fails Because There Has Been No Deprivation and No Retaliatory Motive.

To establish her First Amendment retaliation claim, Plaintiff must show (1) she engaged in protected First Amendment activity, (2) she suffered a deprivation because of that activity, and (3) causation—that is, that the First Amendment activity was at least a motivating factor in a decision to take retaliatory action. *Minocqua Brewing Co. v. Hess*, No. 25-2092, 2025 WL 3292188, at *4 (7th Cir. Nov. 26, 2025).

Importantly, as a student in a public school, C.G.'s First Amendment rights are not subject to the same standards as the First Amendment rights of adults in other settings. "[T]he constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986). The rights of students must be "applied in light of the special characteristics of the school environment." *Tinker v. Des Moines Ind. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). "[T]he Court has repeatedly emphasized the need for affirming the comprehensive authority . . . of school

13

officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Id.* at 507.

Restrictions on student speech are permissible if the speech in question "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Id.* at 513. This is an objective inquiry. *N.J. by Jacob v. Sonnabend*, 37 F.4th 412, 426 (7th Cir. 2022). School officials may impose restrictions where the underlying facts "might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities" or the invasion of the rights of others. *Tinker*, 393 U.S. at 513-14. But schools need not prove "that unless the speech at issue is forbidden[,] serious consequences will *in fact* ensue." *Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. # 204*, 523 F.3d 668, 673 (7th Cir. 2008) (emphasis in original).

In this case, even assuming C.G. engaged in First Amendment protected activity by refusing to change for PE because of Student B's permitted use of the girls' locker room, her First Amendment claim still fails. Plaintiff did not suffer retaliation or a deprivation of her limited right to free speech as a public-school student and, consequently, cannot show her expressive conduct was a motivating factor in any such retaliation or deprivation.

Plaintiff alleges school officials deprived her of her First Amendment rights by (1) telling students not to misgender Student B or refer to her by her former first name, and (2) threatening disciplinary consequences if they continued refusing to change for PE class. The first simply is not a deprivation at all. Teachers are in school to teach and ensure student safety. If one student deliberately engages in conduct that harms another, teachers are entitled and indeed required to step in and correct the behavior. Doing so furthers the fundamental mission of the school and its comprehensive authority to proscribe and control students' conduct. *See Corales v. Bennett*, 567 F.3d 554, 566–67 (9th Cir. 2009) (middle school could properly discipline students who left

14

campus without authorization to participate in a protest because the school's policy furthered important interests unrelated to the suppression of expression). On Plaintiff's theory, one student could use a homophobic slur against another and not be corrected because of the speaking student's claim she was simply exercising her free speech rights. The First Amendment does not require a free-for-all where students are free to disregard school rules.

The second alleged deprivation—the claim that C.G. was threatened with discipline if she did not change in front of Student B and administrators—is both false and irrelevant. A few students were warned of, and received, a "minor" infraction carrying no tangible consequences, but C.G. was not one of those students. Regardless, "trivial or *de minimis* conduct" is not sufficient to show a "cognizable injury to the interests protected by the First Amendment." *Springer v. Durflinger*, No. 03-1200, 2006 WL 8445054, at *11 (C.D. Ill. Apr. 3, 2006). Moreover, students were still free to express their disagreement with the requirement to change for PE but not by refusing to change. *See Brandt v. Bd. of Educ. of City of Chicago*, 480 F.3d 460, 466–67 (7th Cir. 2007) (no deprivation because students had alternate means of protesting).

Finally, these alleged deprivations were not motivated by retaliation against C.G. for her expressive conduct but instead were aimed at ensuring all students were properly attired for PE— a perfectly blameless example of normal regulation of student conduct. Accordingly, Plaintiff cannot satisfy her burden in showing a likelihood of success on the merits of any of her claims.

## III. Plaintiff Has Made No Showing of Irreparable Harm Requiring Immediate Intervention by the Court.

A showing of irreparable harm requires more than a mere possibility of harm. *Michigan v. U.S. Army Corps. of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011). Here, Plaintiff fails to establish any irreparable harm attributable to the District's Policy. Specifically, as asserted in her Complaint, Plaintiff's injury amounts to alleged trauma caused by the prospect of being required to change in

15

the presence of a transgender student and female school administrators in the girls' locker room. (Doc. 1 at ¶¶ 5-9). Perhaps realizing C.G.'s withdrawal from SMS negates any claim she continues to face such harm, Plaintiff changes tacks, now claiming the alleged injury is the harm from not attending school with her classmates and not participating in eighth-grade graduation next spring. (Doc. 18 at *6). Neither constitutes actionable irreparable harm caused by the District's Policy.

At the outset, Defendants unequivocally deny Plaintiff's allegations regarding the alleged events in the locker room as false. Neither C.G. nor any other student was or has been required or directed to undress or change in the presence of any other student, including Student B, or any school administrator or staff member. (Van Treese Decl. ¶¶ 18, 21; Ford Decl. ¶¶ 14, 15, 17, 18; Logemann Decl. ¶¶ 10–11). District practice ensures adult staff are present to monitor the locker rooms for safety reasons. (Simeck Decl. ¶ 11). Given the circumstances related to Student B's anticipated use of the girls' locker room on the days in question, three female administrators were present to address any concerns, ensure students got to PE on time, and remind students of the alternative changing areas and options. (Van Treese Decl. ¶¶ 12, 17; Ford Decl. ¶ 13). Thus, C.G. cannot establish any cognizable harm premised upon these outlandishly false allegations.

Even if she was harmed by the events in February 2025, Plaintiff has not established an irreparable harm as a matter of law. A party seeking a preliminary injunction must demonstrate *future* irreparable harm if relief is not granted. *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1020–21 (7th Cir. 2002). "The extraordinary remedy of a preliminary injunction is designed to protect against future harm, not, [*sic*] harm that has already passed." *Park Ridge Sports, Inc. v. Park Ridge Travel Falcons*, No. 20 C 2244, 2020 WL 6265133, at *11 (N.D. Ill. Aug. 20, 2020) (citing *Turnell*, 796 F.3d at 662). Here, Plaintiff cannot show future irreparable harm arising from the District's Policy because C.G. is no longer enrolled in SMS.

16

Additionally, the Court need not decide whether the harm of being separated from her classmates is the kind of immediate, irreparable harm that requires preliminary relief because, even assuming it is, any such injury was not caused by the District. Rather, such harm is the direct and proximate result of Georgas's decision to remove C.G. from SMS. "[S]elf-inflicted wounds are not irreparable injury. Only the injury inflicted by one's adversary counts for this purpose." *Second City Music*, 333 F.3d at 850; *see also DISH Network LLC v. Cox Media Grp., LLC*, No. 20 C 570, 2020 WL 4053604, at *7 (N.D. Ill. July 20, 2020).

What's more, C.G.'s insistence that immediate, interim relief be granted is seriously undermined by her delay in seeking that relief. The likelihood of irreparable harm takes into account how urgent the need for equitable relief really is. *U.S. Army Corps of Eng'rs*, 667 F.3d at 788. A lengthy, unexplained delay in seeking relief calls into question "how urgent the need for [preliminary] equitable relief really is." *Id.; see also Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001); *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 953 (N.D. Ill. 2018); *Sashital v. Seva Beauty, LLC*, No. 20 C 4692, 2021 WL 1222895, at *7 (N.D. Ill. Mar. 31, 2021) (Pallmeyer, J.). The court in *Redbox* found that the longest delay permitted by the Seventh Circuit was nine months. 310 F. Supp. 3d at 953. Although all relevant underlying events occurred and were known to C.G. between February 24 and February 27, 2025 (Doc. 1 at ¶¶ 32-42), Plaintiff did not file the present Motion until December 1, 2025. Plaintiff's unexplained delay of more than nine months after the underlying events and the initial threat to sue undercuts any legitimate argument that she faces irreparable harm unless the Court acts immediately.

Lastly, Plaintiff's alleged harm is particularly suspect since she has not changed for PE since February 2025; thus, alleviating any need to enter the locker room before PE should that be her choice. Plus, for the 2025-2026 school year, C.G. and Student B were in different PE classes.

17

Plaintiff's alleged fear of harm from merely encountering a transgender student in the locker room is similar to the "entirely conjectural" reasoning rejected in *Martinsville*. 75 F.4th at 772-73. "To find irreparable harm based on one individual's singular, speculative opinion could result in very dangerous precedent[.]" *Valley View Cmty.,* 2025 WL 2785372, at \*7. For these reasons, Plaintiff's Motion should be denied.

## IV. Plaintiff Has Made No Showing That Her Legal Remedy Is Inadequate.

Equally absent from Plaintiff's Motion is any showing of inadequate legal remedies for her alleged harm. To obtain injunctive relief, Plaintiff must demonstrate that traditional legal remedies, *i.e.,* money damages, would be inadequate. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1095 (7th Cir. 2008) (abrogated on other grounds). Each of Plaintiff's three federal law claims arise under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"

C.G. explicitly seeks damages on her federal law claims for emotional distress and psychological harm. (Doc. 1, Prayer for Relief C). Such damages are recoverable under each of the asserted causes of action. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (damages for violations of Section 1983 parallel ordinary tort damages and include recovery for personal humiliation and mental anguish and suffering).[3] Plaintiff has not and cannot show the available damages remedies are inadequate. This failing independently dooms her request for preliminary relief.

---

[3] C.G. does not seek, and Illinois law does not afford, injunctive relief on her state law claims.

**V.      Even If Plaintiff Could Establish the Threshold Requirements for a TRO or Preliminary Injunction, the Balance of Harms and the Public Interest Weigh Heavily Against Injunctive Relief.**

As detailed above, Plaintiff has shown that, at most, her alleged harm was feeling upset by the presence of a transgender student in the locker room on one or two days in February 2025. C.G. was immediately allowed to avoid the locker room and not change for PE, which eliminated any risk of repeated uncomfortable situations during the remainder of the 2024-25 school year and throughout the 2025-26 school year until C.G.'s mother decided to withdraw her from SMS. Conversely, if the Court grants the requested injunctive relief, the District will suffer substantial and unavoidable harm. More importantly, a TRO or preliminary injunction would immediately harm transgender students like Student B by denying them equal access to facilities based on their gender identity. Forcing the District to endorse a policy similar to those repeatedly found unconstitutional and deny students equal access could provoke lawsuits from transgender students or by State authorities.

Just as important, the requested relief directly contradicts the public interest, as articulated by the Illinois legislature and relevant State agencies. The Illinois Human Rights Act, 775 ILCS 1-102(A), specifically bars "discrimination based on . . . sexual orientation . . . [including with respect to] the availability of public accommodations, including in elementary, secondary, and higher education." "Sexual orientation" means, among other things, "gender-related identity, whether or not traditionally associated with the person's designated sex at birth." 5 ILCS 1-103(O-1). In addition, the ISBE has declared that "Students must be allowed to use the facilities that correspond with their gender identity." ISBE, *Supporting Transgender, Nonbinary and Gender Nonconforming Students* 10 (March 1, 2020).[4] The IDHR has issued the same guidance: "Schools

---

[4]      https://www.isbe.net/Documents/ISBE-Guidance-Supporting-Transgender-Nonbinary-Gender-Nonconforming-Students.pdf.

cannot impose on transgender, nonbinary, and gender nonconforming students special conditions or restrictions on the use of facilities or participation in programs that are not imposed on students whose gender identity conforms to their sex assigned at birth." IDHR, *Guidance on Protection of Students in Illinois* (December 2021).[5] And, as explained above, the requested injunction would put the District in the impossible position of refusing to follow binding Seventh Circuit precedent. *See Whitaker*, 858 F.3d 1034; *Martinsville*, 75 F.4th 760. The public interest thus weighs heavily in favor of denying preliminary injunctive relief.

## **CONCLUSION**

For the reasons stated, Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction should be denied.

Dated: December 10, 2025

Respectfully submitted,

DEERFIELD PUBLIC SCHOOLS
DISTRICT 109. JOANNA FORD, and
CATHY VAN TREESE

By:     */s/ Susan Best*
            *One of their Attorneys*

Susan Best (#6302403)
Jessica Petrovski (#6339513)
Laura Knittle (#6313257)
**Gordon Rees Scully Mansukhani LLP**
1 N. Wacker Drive, Suite 1600
Chicago, IL 60606
Tel: (312) 565-1400
sjbest@grsm.com
jpetrovski@grsm.com
lknittle@grsm.com

Chris Gair (#6190781)
Ingrid Yin (#6339857)
**Gair Gallo Eberhard LLP**
1 E. Wacker Drive, Suite 2600
Chicago, IL 60601

---

[5] https://dhr.illinois.gov/publications/guidance-re-illinois-students-1221.html#2b.

Tel: (312) 600-4900
cgair@gairgallo.com
iyin@gairgallo.com

## **<u>CERTIFICATE OF SERVICE</u>**

I, Susan J. Best, an attorney of record, hereby state that on December 10, 2025, I electronically filed the forgoing document using the Court's CM/ECF Filing System, which will send electronic notice to all counsel of record.

By:  */s/ Susan J. Best*

Ajay Gupta
ajguptaemail@gmail.com
2849 Bond Circle
Naperville, Illinois 60563
Tel: (630) 854-7194
*Attorney for Plaintiff*