| | | |
|---|---|---|
| C.G., a minor, by and through her next friend and mother, NICOLE GEORGAS, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:25-cv-13406 |
| v. | ) ) | Honorable Rebecca R. Pallmeyer |
| DEERFIELD PUBLIC SCHOOLS DISTRICT 109, et al., | ) ) ) | |
| Defendants. | ) | |

## DEFENDANT DEERFIELD PUBLIC SCHOOLS DISTRICT 109'S
## RULE 12(b)(6) MOTION TO DISMISS[1]

Defendant Deerfield Public Schools District 109 (the "District"), by and through counsel,

submits this Motion to Dismiss the First Amended Complaint (Doc. 37, "FAC") filed by Plaintiff,

C.G., a minor, by and through her mother, Nicole Georgas ("Plaintiff"). In support thereof, the

District states as follows:

## INTRODUCTION

The FAC attempts to recast a lawful, gender-inclusive school policy into claims of sex-

based discrimination and constitutional injury. But stripped of rhetoric, Plaintiff's allegations

against the District fail as a matter of law. The District's policy—adopted in accordance with State

and Federal guidance and law—applies equally to all students, does not draw any sex-based

classification, and denies no student access to educational programs or facilities. Because the FAC

rests on conclusory assertions rather than actionable discrimination, Plaintiff cannot plausibly

plead violations of the Fourteenth Amendment Equal Protection Clause and Title IX of the

---

[1] Plaintiff's interlocutory appeal of this Court's denial of her motion for injunctive relief does not divest this Court of jurisdiction to decide this motion. *Wisconsin Mut. Ins. Co. v. United States*, 441 F.3d 502, 504 (7th Cir. 2006); *Protect Our Parks, Inc. v. Buttigieg*, No. 21-CV-2006, 2022 WL 910641, at *2 n.4 (N.D. Ill. Mar. 29, 2022).

Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX"). Thus, Counts I and II of the FAC must be dismissed.[2]

## **FACTUAL BACKGROUND**[3]

Plaintiff C.G. was a student at Shepard Middle School ("SMS") in Deerfield (FAC ¶ 32), a part of the District. (*Id.* ¶ 23). The District has a policy allowing each student to access all school facilities consistent with that student's gender identity. (*See id.* ¶ 10). The District policy provides in relevant part:

> Equal educational and extracurricular opportunities shall be available for all students without regard to . . . gender identity . . . .
>
> Sex Equity
>
> No student shall, based on sex, sexual orientation, or gender identity be denied equal access to programs, activities, services, or benefits or be limited in the exercise of any right, privilege, advantage, or denied equal access to educational and extracurricular programs and activities.[4]

The District's policy and its implementation are consistent with guidance from the State of Illinois. (*Id.* ¶ 10). According to the Illinois Department of Human Rights ("IDHR"), "[a] student must be permitted to access restrooms or bathrooms, locker rooms and changing rooms that align with their gender-related identity and without having to provide documentation or other proof of gender."[5] The guidance issued by the Illinois State Board of Education ("ISBE") similarly provides

---

[2] Individual Defendants Joanna Ford and Cathy Van Treese file their motion to dismiss Count I and others separately.

[3] As required for a motion to dismiss, the District takes all of Plaintiff's allegations as true for the purposes of this Motion only. The District reserves the right to contest any factual allegations as litigation progresses if necessary.

[4] Deerfield Pub. Sch. Dist. 109 Policy Manual § 7:10, https://boardpolicyonline.com/?b=deerfield_109&s=137778.

[5] IDHR, Non-Regulatory Guidance, Relating to Protection of Transgender, Nonbinary, and Gender Nonconforming Students Under the Illinois Human Rights Act (Dec. 2021) at 6, https://dhr.illinois.gov/content/dam/soi/en/web/dhr/publications/documents/idhr-guidance-relating-toprotection-of-transgender-nonbinary-and-gender-nonconforming-students-eng-web.pdf.

that "[s]tudents must be allowed to use the facilities that correspond with their gender identity."[6] [7]

Consistent with the District's policy and State guidance, the District authorized a transgender female student to begin using the girls' locker room in late February 2025. (FAC ¶¶ 10, 15, 32, 44). C.G., a female student in a physical education ("P.E.") class, was allegedly present in the girls' locker room on February 24 along with the transgender student and others. (*Id.* ¶¶ 33–34). C.G. and several others were "uneasy" with the situation and protested by refusing to change into their P.E. clothes. (*Id.* ¶ 35). Some of the protesting students, but not C.G., later met with Defendant Cathy Van Treese, the assistant principal, on February 25. (*Id.* ¶ 36). Van Treese told them they could not "misgender[]" the student and threatened discipline if they did not change "in front of" the transgender female student. (*Id.* ¶ 37).[8] Later the same day, Defendant Joanna Ford, assistant superintendent for student services, and Van Treese entered the girls' locker room and "coerced" C.G. and her classmates to change their clothes under their supervision. (*Id.* ¶ 38). C.G. alleges she was "forced" to remove her normal outer garments but not underwear in the presence of the administrators and the transgender student. (*Id.* ¶ 39). Van Treese and Ford again supervised the locker room on February 27, reinforcing compliance with the requirement that students change for P.E. class. (*Id.* ¶ 40). Following that day, C.G. stopped changing for P.E. class. (*Id.* ¶ 43). The FAC does not allege that any discipline was ever imposed on C.G.

---

[6] ISBE, Non-Regulatory Guidance, Supporting Transgender, Nonbinary and Gender Nonconforming Students (March 1, 2020) at 10, https://www.isbe.net/Documents/ISBE-Guidance-Supporting-Transgender-Nonbinary-Gender-Nonconforming-Students.pdf.

[7] The Court can properly consider these policies because they are explicitly referred to in the FAC, *see* ¶¶ 8, 10, 14, 15, 17, 23, 24, 25, 26, 37, 44, 46, 47, 49, 53–60, 66, 67, 69–72 and integral to the claims, and because they are public records. *See Fosnight v. Jones,* 41 F.4th 916, 922 (7th Cir. 2022) (a court "may take judicial notice of matters of public record when ruling on a motion to dismiss.").

[8] While the Court on a motion to dismiss must assume these allegations to be true, they are in fact entirely false, as the evidence will show. No school official ever required C.G. or anyone else to change clothes "in front of" them or any other student.

<u>**LEGAL STANDARD**</u>

A motion to dismiss pursuant to Rule 12(b)(6) evaluates a complaint for "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint may not merely state an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When deciding the sufficiency of a complaint under this standard, courts must accept all well-pleaded factual allegations as true. *See Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). However, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotations omitted). Courts may "reject sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Int'l Bhd. of Teamsters, Loc. 781,* 947 F.3d 464, 469 (7th Cir. 2020) (citations omitted). In addition, courts may also consider documents that are critical to the complaint and referred to in it, and information properly subject to judicial notice. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

<u>**ARGUMENT**</u>

I.      **Plaintiff Fails to State a Section 1983 Claim Against the District Because its Policy Does Not Violate the Fourteenth Amendment's Equal Protection Clause.**

Because the Equal Protection Clause does not create a private right of action, Plaintiff brings her claim under Section 1983, which requires her to show a deprivation "of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). The District, as a local government body, may be held liable for its own violations of the federal Constitution and laws: under limited circumstances. *First Midwest Bank Guardian of Estate of LaPorta v. City of Chi.,* 988 F.3d 978, 986 (7th Cir. 2021) (quoting *Monell v. Dep't of Soc. Svcs.,* 436 U.S. 658, 690-91 (1978)). To be liable under

Section 1983, the unconstitutional act complained of must be caused by (1) an official policy; (2) a practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell,* 436 U.S. at 690). *Monell* imposes a high bar for liability: the local governmental body's action must have been taken with "deliberate indifference" to one's constitutional rights and must have been the "moving force" behind the constitutional violation. *First Midwest Bank*, 988 F.3d at 987. Deliberate indifference goes beyond failure to act; the conduct must rise to the level of criminal recklessness. *Flores v. City of S. Bend*, 997 F.3d 725, 729 (7th Cir. 2021).

Here, Plaintiff fails to plausibly plead a claim under *Monell* because there is no constitutional violation based on the District's inclusive policy and there are no facts to support a finding of deliberate indifference.

### A. The District's policy does not include any sex-based classification triggering heightened scrutiny and violating the Equal Protection Clause.

The Equal Protection Clause mandates that individuals in similar circumstances be treated equally. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). It prohibits state and local governments from discriminating on the basis of certain protected classifications. *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). For an equal protection claim based on class membership to survive a motion to dismiss, plaintiffs must sufficiently allege they were treated differently by the government based on membership in a protected class, and that the defendant acted with discriminatory intent. *See Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). Typically, state actions are presumed to be lawful and will be upheld if the classification is rationally related to a legitimate state interest. *Id.* at 440. For a sex-based classification, however, the state must prove an "exceedingly persuasive justification," demonstrating that the classification

5

advances important governmental objectives and that the discriminatory methods are substantially related to achieving those objectives. *United States v. Virginia*, 518 U.S. 515, 531, 533 (1996) (internal citations omitted).

Plaintiff argues the District's policy, which she claims "accommodates male students with non-conforming gender preferences in multi-use sex-segregated spaces," discriminates against "female students because it denies them the use of secure sex-segregated spaces free from intrusion by males." (FAC ¶ 12). Plaintiff alleges the policy "grants biological males… the option to choose between sex-segregated spaces aligned with their biological sex or their self-declared gender preference, an option not afforded to female students like C.G." (*Id.* ¶ 47). According to Plaintiff, the policy treats "female students differently based on their sex, without any compelling governmental interest or narrowly tailored means to justify such discrimination, thus violating the Equal Protection Clause." (*Id.* ¶ 16). This attempt to portray the District's policy as a sex-based classification, however, ignores the plain language and gender-inclusive nature of the policy. Indeed, the District's policy allows *all* students, regardless of their sex or any other classification, to access facilities that align with their gender identity.

Such gender-neutral policies have been found to be devoid of any sex-based classification that would trigger heightened scrutiny and require the District to have an "exceedingly persuasive" justification for any unequal treatment. For example, in a recent similar case, a student at Bolingbrook High School alleged that school district's policy violated the Equal Protection Clause and Title IX by allowing transgender female students access to "female-only" spaces such as locker rooms and restrooms. *See F.F. by Fisher v. Valley View Cmty. Unit Sch. Dist. 365U,* No. 25-CV-09112, 2025 WL 2785372, at *1 (N.D. Ill. Sept. 30, 2025). There, Judge Coleman found the at-issue policy—which is nearly identical to the District's gender-neutral policy here—did not

6

constitute sex-based discrimination because, under the policy, "*ALL* students, regardless of gender, are permitted access to facilities that align with their gender identity." *Id.* at *4 (emphasis in original). Accordingly, Judge Coleman determined the defendant's policy did not include any sex-based classification triggering heightened scrutiny and violating the Equal Protection Clause. *Id.*

Similarly, the District's policy unequivocally does not include any sex-based classifications that would trigger a heightened scrutiny analysis or violate the Equal Protection Clause. The District's policy permits *all* students—regardless of sex—equal access to the school facilities that align with their gender identity. *See supra,* n. 4. The policy allows both "biological males" and "biological females," as denoted by Plaintiff, to use the facilities that their align with their biological sex or their gender identity, if different. Plaintiff baldly asserts that the District's policy, and its reliance on the IDHR's guidance, disproportionately affects "biologically female" students. These allegations are conclusory, purely speculative, and contrary to the language of the written policy. The District's inclusive policy simply does not prohibit conduct for one sex that it permits for others. Thus, there is no sex-based classification subjecting the policy to heightened scrutiny or establishing a violation of the Equal Protection Clause.

By contrast, Plaintiff advocates changes to the District's policy that *would* implicate review under heightened scrutiny and lead to a violation of the Equal Protection Clause. Plaintiff appears to argue the District's policy treats cisgender students like C.G. differently than transgender students, lamenting the absence of "any requirement for medical documentation or consistent gender expression" and "prioritizing self-declared gender preferences over the privacy rights of female students" (FAC ¶¶ 44, 58). However, requiring such objective criteria for transgender students and allowing for disparate gender identification practices would lead to the precise unconstitutional scenario the Seventh Circuit has repeatedly rebuked—a ban on

transgender students' access to facilities that align with their gender identity in violation of the Equal Protection Clause. *See generally, Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,* 858 F.3d 1034, 1051-52 (7th Cir. 2017); *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville,* 75 F.4th 760, 772 (7th Cir. 2023). The policies in *Whitaker* and *Martinsville* required students to use the gender-specific restroom matching their birth certificates and, although the school districts claimed their policies treated all students the same, the Seventh Circuit found transgender students who failed to conform to sex-based stereotypes associated with their assigned sex at birth were treated differently. *Whitaker,* 858 F.3d at 1051-52; *Martinsville,* 75 F.4th at 772. In both cases, the Seventh Circuit found the defendants' alleged student privacy concerns were not "exceedingly persuasive" justifications for their policies' sex-based classifications and thus violated the Equal Protection Clause. *Whitaker,* 858 F.3d at 1051-52; *Martinsville,* 75 F.4th at 772-73.

Contrary to the unconstitutional exclusionary policies in *Whitaker* and *Martinsville,* the District's inclusive policy does not treat transgender students differently based on their status as transgender. *Whitaker* and *Martinsville* remain binding precedent. While the Seventh Circuit in *D.P. by A.B v. Mukwonago Area School District*, No. 23-2568, 2025 WL 1794428, at *1 (7th Cir. June 30, 2025) granted a panel rehearing to consider overruling *Whittaker* and *Martinsville* in light of the Supreme Court's decision in *United States v. Skrmetti,* 605 U.S. 495 (2025), the outcome makes no difference here. Even if (a) those cases are overruled or (b) the District's current policy *did* treat transgender students differently than cisgender students as Plaintiff alleges, the District's policy would only be subject to rational basis review under *Skrmetti*. In that case, the Supreme Court determined a Tennessee law prohibiting certain medical treatments for transgender minors was not subject to heightened scrutiny because the law did not prohibit conduct for one sex that it

permitted for the other. *Skrmetti,* 605 U.S. at 511. Instead, the Supreme Court held such classifications are subject to rational basis review. *Id.* at 510. Under that standard, the District's policy would be given even more deference than the heightened scrutiny applied in *Whittaker* and *Martinsville*. The more relaxed rationale basis inquiry requires a court to uphold a classification so long as there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 314 (1993). Where there exist "plausible reasons" for the relevant government action, the court's inquiry ends. *Skrmetti,* 605 U.S. at 522.

Thus, even if cisgender students like C.G. were subject to unequal treatment under the policy, which the District denies, Plaintiff's Equal Protection claim would nonetheless fail because the policy is supported by "plausible reasons," that is, "to provide welcoming, safe, supportive and inclusive school environments for transgender, nonbinary and gender nonconforming students," who are especially prone to abuse and other safety concerns at school. *See* ISBE, Non-Regulatory Guidance, Supporting Transgender, Nonbinary and Gender Nonconforming Students (March 1, 2020) at 2, 7.[9] By implementing and following its Policy, the District advances those goals and ensures all students have equal access to educational facilities and accommodations in accordance with State and Federal law. Therefore, Plaintiff's Equal Protection claim must be dismissed.

### B. Absent an Equal Protection Clause violation, Plaintiff cannot plausibly allege the District acted with "deliberate indifference" to her constitutional rights.

Ultimately, Plaintiff's Equal Protection claim faces a fatal flaw—the District's policy contains *no classification whatsoever* since it applies equally to *all* students. Because the policy treats all students alike, there is no unequal treatment and no deprivation of constitutional rights. As such, Plaintiff cannot plausibly allege that the District acted with the "deliberate indifference"

---

[9] *Supra,* n. 6.

necessary to impose liability under Section 1983. *First Midwest Bank*, 988 F.3d at 987. Deliberate indifference requires actual knowledge that a particular action is substantially likely to result in a constitutional violation. *Flores*, 997 F.3d at 729. Here, the District's conduct reflects the opposite. Its policy aligns with Illinois law and controlling Seventh Circuit precedent, and its enforcement of that policy demonstrates a good-faith effort to uphold the law—not disregard constitutional rights. Accordingly, Plaintiff's Equal Protection claim must be dismissed.

II. **Plaintiff Fails to State a Claim Under Title IX Because the District's Policy Does Not Discriminate Based on Sex.**

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To sufficiently plead Title IX sex discrimination, Plaintiff must allege: (1) that she was excluded from participation in or denied benefits of or subjected to discrimination in an educational program; (2) that received federal financial assistance; and (3) that the exclusion was on the basis of sex. *Ludlow v. Nw. Univ.,* 125 F.Supp.3d 783, 791-92 (N.D. Ill. 2015) (citation and quotation omitted). However, Title IX does not create a private right of action for disparate impact cases. *Id.* at 793 (citation omitted). Thus, to survive a motion to dismiss, Plaintiff "must provide some allegations to allow the Court to infer a causal connection between [her] treatment and gender bias and raise the possibility of relief under Title IX above the speculation level." *Id.* at 792 (citations omitted).

Here, according to Plaintiff, C.G. and other "female" students face discrimination because the District's policy forces them to share facilities with "biological males" based solely on "self-declared preferences" and without objective criteria like medical documentation or "consistent gender identity." (FAC ¶ 44). Plaintiff further claims the District "subjected C.G. to sex-based discrimination by enforcing a policy that allowed a male student to use the girls' locker room,

10

disregarding her privacy and safety." (*Id.* at ¶ 70).

Plaintiff's Title IX theory does not involve C.G.'s access to locker rooms and bathrooms, which is the same as every other District student, but instead focuses on her own privacy concerns. (*See e.g., id.* ¶¶ 3, 17, 35, 45-46, 49). However, such theories based on similar conjectural privacy concerns are regularly dismissed by courts. *See Whitaker,* 858 F.3d at 1048-50; *see also Students & Parents for Privacy v. U.S. Dep't of Educ.,* No. 16-CV-4945, 2017 WL 6629520, at *6 (N.D. Ill. Dec. 29, 2017). Specifically, the Seventh Circuit in *Martinsville* determined that a restroom policy relying on biological sex to address "privacy concerns" for cisgender students violates Title IX because (i) a transgender student's presence in their gender affirming facility "did not threaten those privacy interests," and (ii) "gender-affirming access policies neither thwart rule enforcement nor increase the risk of misbehavior in bathrooms and locker rooms." *Martinsville,* 75 F.4th at 773-74. Therefore, Plaintiff's efforts to exclude transgender students from facilities based on privacy concerns, and not the inclusion of transgender students based on their gender identity, violates Title IX.

Moreover, as addressed above*,* the District's policy does not prohibit conduct for one sex that it allows for others. Plaintiff's allegations to the contrary are wholly speculative and ignore the language of the District's policy. The policy, which allows transgender females to use the girls' locker room, does not simultaneously prohibit transgender males from using the boys' locker room. In Plaintiff's terms, "biological males" are permitted to use the girls' locker room, and "biological females" are permitted to use the boys' locker room if those facilities align with the students' gender identities. Plaintiff has not shown she experienced any discrimination based on her sex. Consistent with State and Federal guidelines and laws, C.G.—like every other student—is allowed access to the locker room and bathroom that aligns with their gender identity. No disparate

treatment arises from this inclusive access. *See Valley View Cmty.*, 2025 WL 2785372, at \*6 (no violation of Title IX where policy guaranteed all students equal rights under the statute). Consequently, Plaintiff fails to state a viable Title IX claim and Count II of the FAC must be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Defendant Deerfield Public Schools District 109 respectfully requests this Court grant its Motion to Dismiss Counts I and II of Plaintiff's FAC and award any other relief deemed just and proper.

Dated: January 23, 2026

Respectfully submitted,

DEERFIELD PUBLIC SCHOOLS
DISTRICT 109

By:    */s/ Susan Best*
      *One of its Attorneys*

Susan Best (#6302403)
Jessica Petrovski (#6339513)
Laura Knittle (#6313257)
**Gordon Rees Scully Mansukhani LLP**
1 N. Wacker Drive, Suite 1600
Chicago, IL 60606
Tel: (312) 565-1400
sjbest@grsm.com
jpetrovski@grsm.com
lknittle@grsm.com

Chris Gair (#6190781)
Ingrid Yin (#6339857)
**Gair Gallo Eberhard LLP**
1 E. Wacker Drive, Suite 2600
Chicago, IL 60601
Tel: (312) 600-4900
cgair@gairgallo.com
iyin@gairgallo.com

## <u>CERTIFICATE OF SERVICE</u>

I, Susan J. Best, an attorney of record, hereby state that on January 23, 2026, I electronically filed the forgoing document using the Court's CM/ECF Filing System, which will send electronic notice to all counsel of record.

By: <u>*/s/ Susan J. Best*</u>

Ajay Gupta
ajguptaemail@gmail.com
2849 Bond Circle
Naperville, Illinois 60563
Tel: (630) 854-7194
*Attorney for Plaintiff*