# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

C.G., a minor, by and through her next friend and mother, NICOLE GEORGAS, )
)
)
)

Plaintiff, )

v. )
)

DEERFIELD PUBLIC SCHOOLS DISTRICT 109, et al., )
)
)

Defendants. )

Case No.: 25-CV-13406

Judge Rebecca Pallmeyer

## DEFENDANTS FORD AND VAN TREESE'S MOTION TO DISMISS[1]

### Introduction

C.G.'s First Amended Complaint ("FAC") attempts to substitute overwrought rhetoric—*see, e.g.*, FAC ¶ 2 ("C.G. froze"), ¶ 3 (locker room is a "sanctuary"), ¶ 4 ("chilling ultimatum," "weaponizing the . . . policy"), ¶ 5 (the "air felt thick with shame," the defendants were "strangers wielding their authority like a cudgel"), ¶ 6 ("the nightmare seemed destined to repeat itself," "[h]er body screamed escape")—for plausibly pled claims. Her claim that Joanna Ford and Cathy Van Treese violated the Equal Protection Clause fails because the policy they were charged with enforcing does not create any gender-based classification. Her limited rights as a student under the First Amendment were not violated because she has not alleged any plausible deprivation of those rights nor any retaliatory motivation. Both constitutional claims are also barred by qualified immunity.

---

[1] C.G.'s interlocutory appeal of this Court's denial of her motion for injunctive relief does not divest this Court of jurisdiction to decide this motion. *Wisconsin Mut. Ins. Co. v. United States*, 441 F.3d 502, 504 (7th Cir. 2006); *Protect Our Parks, Inc. v. Buttigieg*, 2022 WL 910641, at *2 n.4 (N.D. Ill. Mar. 29, 2022).

Her state law tort claims do not plead the elements of those claims, including conduct that is so outrageous as to be intolerable in a civilized community. They must also be dismissed as the FAC itself alleges the elements establishing the individuals' tort immunity under state law.

**<u>Factual allegations</u>**

Plaintiff C.G. was a student at Shepard Middle School ("SMS") in Deerfield (FAC ¶ 32), part of Deerfield Public Schools District 109 (the "District"). (*Id.* ¶ 23). The District has a policy allowing each student to access all school facilities consistent with that student's gender identity. (*See id.* ¶ 10). The District policy provides in relevant part:

> Equal educational and extracurricular opportunities shall be available for all students without regard to . . . gender identity . . . .
>
> <u>Sex Equity</u>
>
> No student shall, based on sex, sexual orientation, or gender identity be denied equal access to programs, activities, services, or benefits or be limited in the exercise of any right, privilege, advantage, or denied equal access to educational and extracurricular programs and activities.[2]

The District's policy and its implementation are consistent with guidance from the State of Illinois. (FAC ¶ 10). According to the Illinois Department of Human Rights ("IDHR"), "[a] student must be permitted to access restrooms or bathrooms, locker rooms and changing rooms that align with their gender-related identity and without having to provide documentation or other proof of gender."[3] The guidance issued by the Illinois State Board of Education ("ISBE") similarly provides that "[s]tudents must be allowed to use the facilities that correspond with their gender identity."[4]

---

[2] Deerfield Pub. Schs. Dist. 109 Policy Manual § 7:10, https://boardpolicyonline.com/?b=deerfield_109&s=137778.

[3] IDHR, Non-Regulatory Guidance, Relating to Protection of Transgender, Nonbinary, and Gender Nonconforming Students Under the Illinois Human Rights Act (Dec. 2021) at 6, https://dhr.illinois.gov/content/dam/soi/en/web/dhr/publications/documents/idhr-guidance-relating-toprotection-of-transgender-nonbinary-and-gender-nonconforming-students-eng-web.pdf.

[4] ISBE, Non-Regulatory Guidance, Supporting Transgender, Nonbinary and Gender Nonconforming Students (Mar. 1, 2020) at 10, https://www.isbe.net/Documents/ISBE-Guidance-Supporting-Transgender-Nonbinary-Gender-Nonconforming-Students.pdf.

Consistent with the District's policy and State guidance,[5] the District authorized a transgender female student to begin using the girls' locker room in late February 2025. (FAC ¶¶ 10, 15, 32, 44). C.G., a female student in a physical education ("P.E.") class, was allegedly present in the girls' locker room on February 24 along with the transgender student and others. (*Id.* ¶¶ 33–34). C.G. and several others were "uneasy" with the situation and protested by refusing to change into their P.E. clothes. (*Id.* ¶ 35). Some of the protesting students, but not C.G., later met with Defendant Cathy Van Treese, the assistant principal, on February 25. (*Id.* ¶ 36). Van Treese told them they could not "misgender[]" the student and threatened discipline if they did not change "in front of" the transgender female student. (*Id.* ¶ 37).[6] Later the same day, Defendant Joanna Ford, assistant superintendent for student services, and Van Treese entered the girls' locker room and "coerced" C.G. and her classmates to change their clothes under their supervision. (*Id.* ¶ 38). C.G. alleges she was "forced" to remove her normal outer garments but not underwear in the presence of the administrators and the transgender student. (*Id.* ¶ 39). Van Treese and Ford again supervised the locker room on February 27, reinforcing compliance with the requirement that students change for P.E. class. (*Id.* ¶ 40). Following that day, C.G. stopped changing for P.E. class. (*Id.* ¶ 43). The FAC does not allege that any discipline was ever imposed on C.G.

**<u>Legal standard</u>**

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is considered plausible

---

[5] The Court can properly consider these policies because they are explicitly referred to in the FAC, *see* ¶¶ 8, 10, 14, 15, 17, 23, 24, 25, 26, 37, 44, 46, 47, 49, 53–60, 66, 67, 69–72 and integral to the claims, and because they are public records. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

[6] While the Court on a motion to dismiss must assume these allegations to be true, they are in fact entirely false, as the evidence will show. No school official ever required C.G. or anyone else to change clothes "in front of" them or any other student.

if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

<u>Argument</u>

**I.    Plaintiff's Equal Protection Claim Fails Because She Has Not Alleged Any Classification Based on Gender. (Count I).**

In Count I, Plaintiff claims Van Treese and Ford violated her rights under the Equal Protection Clause. The claims against them in their official capacities must be dismissed because such actions are really suits against the government entity. *See Walker v. Sheahan,* 526 F.3d 973, 977 (7th Cir. 2008); *Davis v. Village of Hazel Crest*, 2018 WL 835224, at *3 (N.D. Ill. 2018) (official capacity suit dismissed as duplicative of claim against government entity). With respect to the claim against the individuals in their individual capacities, Count I must be dismissed for the reasons stated in the District's Motion to Dismiss, which is incorporated and adopted here.

**II.   Plaintiff Fails to Adequately Plead a First Amendment Violation. (Count III).**

In Count III, C.G. claims that she engaged in conduct protected by the First Amendment when she refused to change into P.E. clothes. (FAC ¶ 76). She alleges Ford and Van Treese retaliated against her for this exercise of rights (a) by threatening discipline for not changing and for "misgendering" a transgender female student (*id.* ¶ 78(a)); (b) by supposedly coercing her to undress to her underclothes in order to change into P.E. clothes in the presence of the transgender female student (*id.* ¶ 78(b)); (c) by supervising the locker room on February 27, 2025 (*id.* ¶ 78(c)); and (d) by allegedly suggesting to the principal that she switch P.E. classes (*id.* ¶ 78(d)). None of these allegations plausibly state a violation of the First Amendment.

To establish a First Amendment claim, a plaintiff must show (1) she engaged in protected First Amendment activity, (2) she suffered a deprivation because of that activity, and (3) causation—that is, that the First Amendment activity was at least a motivating factor in a decision

to take retaliatory action. *Minocqua Brewing Co. v. Hess*, 160 F.4th 849, 855 (7th Cir. 2025). "[T]he constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986). The rights of students must be "applied in light of the special characteristics of the school environment." *Tinker v. Des Moines Ind. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). "[T]he Court has repeatedly emphasized the need for affirming the comprehensive authority . . . of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Id.* at 507. School officials may impose restrictions where the facts "might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities" or the invasion of the rights of others. *Id.* at 513–14.

Assuming, for the purposes of this motion, that C.G. engaged in expressive conduct under the First Amendment, Count III nevertheless fails as a matter of law because C.G. does not allege a deprivation of her limited right to free speech as a student or any retaliatory motivation.

**Deprivation.** None of the acts alleged amount to any deprivation of C.G.'s limited First Amendment rights. In warning of discipline for not changing and for misgendering a fellow student, Ford and Van Treese were simply carrying out their duties to enforce school rules and teach good citizenship. "The primary duty of school officials and teachers . . . is the education and training of young people," which requires "discipline and maintaining order." *New Jersey v. T.L.O.*, 469 U.S. 325, 350 (1985) (Powell, J., concurring). If a student violates school rules, it is the duty of school officials to discipline—or at least warn of the possibility of discipline. *See Ziegler v. Marin Cnty. Sch. Dist.*, 831 F.3d 1309, 1327 (11th Cir. 2016). And if a student deliberately engages in conduct that harms another, school officials are entitled, and indeed required, to step in and correct the behavior. Doing so furthers the fundamental mission of the school and its

5

comprehensive authority to proscribe and control students' conduct. On C.G.'s theory, one student could use a homophobic, racial, or other slur against another and not be corrected because of the speaking student's claim she was simply exercising her free speech rights. The First Amendment does not require a middle school free-for-all in which students set the rules.

In any event, a warning of potential discipline does not, as a matter of law, implicate free speech rights. "[T]rivial or *de minimis* conduct" is not sufficient to show a "cognizable injury to the interests protected by the First Amendment." *Springer v. Durflinger*, 2006 WL 8445054, at *11 (C.D. Ill. Apr. 3, 2006). This is especially true here because there is no allegation C.G. was disciplined, and because she was still free to express her disagreement with the requirement to change for P.E. by other means. *See Brandt v. Bd. of Educ. of City of Chi.*, 480 F.3d 460, 466–67 (7th Cir. 2007).

C.G.'s claim that being required to change for P.E. class deprived her of free speech rights is simply incoherent. The FAC admits that C.G. entered the locker room on February 24 *expecting to change for P.E. class*. (FAC ¶ 2). It is utterly implausible to contend this normal expectation somehow transmogrified into a constitutional violation because it was reiterated by school authorities after she voiced an objection to a transgender female student's presence.

The FAC does not even pretend to explain how the administrators' supervision of the locker room on February 27 could amount to a deprivation of C.G.'s right to free speech. Indeed, the FAC makes crystal clear that Van Treese and Ford were present for a completely proper purpose unrelated to the suppression of speech: "supervising, ensuring compliance" with the rule that students must change for P.E. class. (*Id.* ¶ 6). C.G.'s final alleged deprivation, that the administrators "punish[ed]" her by suggesting to the principal that C.G. be moved to another P.E.

class, did not deprive her of anything at all, much less her right to speak since she suffered no harm and nothing in the FAC suggests that it was adopted. The allegation is wholly implausible.

**Retaliatory motive.** Nor is there anything in the FAC that plausibly alleges anything Ford and Van Treese did was motivated by retaliatory animus for C.G. expressing her views, as opposed to the enforcement of school rules. *See Vetrano v. Miller Place Union Free Sch. Dist.*, 369 F. Supp. 3d 462, 474 (E.D.N.Y. 2019). To the contrary, it is evident both from the face of the FAC, as well as common sense, that the administrators were acting for completely speech-neutral reasons: carrying out the District's equal access policy based on State agency guidance (*see, e.g.*, FAC ¶¶ 4, 8, 10, 14, 23, 24, 25, 26, 37, 44, 46, 47) and the rule that students should change for P.E. class. Accordingly, C.G. has failed to plead a First Amendment violation.

**III.    Counts I and III Must Also Be Dismissed Because Van Treese and Ford Are Entitled to Qualified Immunity**.

"Public officials performing discretionary functions are entitled to qualified immunity from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997) (internal quotations omitted). Qualified immunity can be raised on a motion to dismiss. *Id.* (dismissing, *inter alia*, on qualified immunity).

For the reasons stated in Sections I and II, C.G. cannot establish that Ford's or Van Treese's conduct violated her constitutional rights. Nor can C.G. demonstrate that Ford's and Van Treese's enforcement of the District's policy was a violation of constitutional rights clearly established at the time such that a "reasonable official would understand that what [s]he is doing violates that right." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (citation omitted). Quite the opposite, the enforcement of the District's policy was consistent with Seventh Circuit precedent and State laws. *See, e.g., A.C. by M.C. v. Metro Sch. Dist. of Martinsville,* 75 F.4th 760 (7th Cir.

2023). Therefore, Ford and Van Treese are entitled to qualified immunity on C.G.'s Equal Protection and First Amendment claims.

**IV.     Count IV Fails to Allege a Valid Claim for Intentional Infliction of Emotional Distress.**

C.G. complains in Count IV that Van Treese and Ford committed the tort of intentional infliction of emotional distress ("IIED") based on the same conduct described above. (FAC ¶ 83). None of this comes anywhere close to pleading a case for intentional infliction of emotional distress.

An IIED claim requires C.G. to plead the following elements: (1) the conduct involved was extreme and outrageous; (2) the actor either intended the conduct to inflict severe emotional distress or knew there was at least a high probability the conduct would cause severe emotional distress; and (3) the conduct did in fact cause severe emotional distress. *DiPietro v. GATX Corp.*, 2020 IL App (1st) 192196, ¶ 50. "[T]he tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath v. Fahey*, 126 Ill.2d 78, 86 (1988) (quoting Restatement (Second) of Torts § 46). Instead, the defendant's conduct "must be so extreme as to *go beyond all possible bounds of decency and . . . be regarded as intolerable in a civilized community*." *Taliani v. Resurreccion*, 2018 IL App (3d) 160327, ¶ 26 (emphasis added). The "case law is replete with claims for intentional infliction of emotional distress that were dismissed by the court at the pleadings stage for failure to allege sufficiently extreme and outrageous conduct." *Douglas v. Lofton*, 2013 WL 2156053, at *10 (N.D. Ill. May 17, 2013).

**Extreme and outrageous conduct.** The conduct alleged is not, as a matter of law, so extreme and outrageous as to be intolerable in a civilized community. For starters, outrageous conduct requires allegations of "systematic and intentional actions designed to humiliate the plaintiff." *Piech v. Arthur Andersen & Co.*, 841 F. Supp. 825, 832 (N.D. Ill. 1994); *see also Lundy v. City of Calumet City*, 209 Ill. App. 3d 790, 793–94 (1991) (conduct not extreme and outrageous

8

where "plaintiffs have not alleged that they were threatened or subjected to a recurring pattern of abusive contact"); *Ianson ex rel. Ianson v. Zion-Benton Twp. High Sch.*, 2001 WL 185021, at *7 (N.D. Ill. Feb. 20, 2001) ("A single isolated incident is not extreme and outrageous conduct."). The allegations here encompassing only two days do not involve a recurring pattern.

In any event, the "beyond all possible bounds of decency" and "intolerable in a civilized community" bars to establish outrageous conduct are exceedingly high. *See, e.g., H.Y. ex rel. K.Y. v. Russell Cnty. Bd. of Educ.*, 490 F. Supp. 2d 1174, 1195–96 (M.D. Ala. 2007) (strip search of students by school employees in school bathroom was not extreme and outrageous conduct); *K.K. by and through J.K. v. Clark Cnty. Bd. of Educ.*, 439 F. Supp. 3d 905, 921 (E.D. Ky. 2020) (school administrators investigating allegation of child abuse did not engage in extreme and outrageous conduct when they called student into office and asked her to pull up her shirt and pull down her pants to look for bruises); *Jackson v. City of Wooster Bd. of Educ.*, 504 N.E.2d 1144, 1147 (Ohio App. Ct. 1985) (student failed to allege extreme and outrageous conduct against P.E. teacher who ordered student to do push-ups in locker room while naked); *E.C. v. Pittsburgh Pub. Schs.*, 415 F. Supp. 3d 636, 665–66 (W.D. Pa. 2019) (handcuffing and restraining student in classroom to protect student safety was not extreme or outrageous conduct); *Nardella v. Leyden High Sch. Dist. 212*, 2016 WL 3418571, at *1, 3 (N.D. Ill. June 22, 2016) (dismissing claim where teachers humiliated disabled student in an "ongoing and punitive manner").

The conduct involved here is far less egregious. Even accepting the allegation that, in carrying out school rules and the District's equal access policy, the administrators forced C.G. to remove her outer garments and change into P.E. clothes in the presence of the transgender student, that conduct cannot possibly be regarded as "intolerable in a civilized community." Personal privacy concerns must be balanced against other important government interests, including

protecting transgender students from discrimination. *See Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 527 (3d Cir. 2018) (rejecting constitutional privacy claim where students complained that locker room access policy "permitted them to be viewed by members of the opposite sex while partially clothed"). Moreover, the administrators' actions cannot possibly be considered intolerable in a civilized community where the policy they were enforcing was established by precisely those the community empowered to establish the relevant community standards: the District and the State of Illinois. *Supra,* pp. 1–3 and footnotes 1–3.

**Knowledge and intent.** Count IV also fails to satisfy the second element of the tort. The FAC is devoid of any allegations whatsoever relating to Van Treese or Ford's intent. Nor can the Court infer that there was a high probability they knew their actions would cause severe emotional distress. "School locker rooms and restrooms are spaces where it is not only common to encounter others in various stages of undress, it is expected. . . . As the Supreme Court has stated, '[p]ublic school locker rooms . . . are not notable for the privacy they afford.'" *Doe by and through Doe*, 897 F.3d at 531 (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995)).

**Severe emotional distress.** The FAC also fails to adequately allege the third element of an IIED claim. C.G. alleges she "suffered severe emotional distress, manifested by nightmares, a loss of confidence, [and] fear of the locker room." (FAC ¶ 86). Such allegations are insufficient. "The emotional distress required to support the cause of action must be so severe that no reasonable person could be expected to endure it." *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 38 (1997). Problems sleeping, nightmares, and fear of repeated incidents are insufficient as a matter of law. *See Khan v. Am. Airlines*, 266 Ill. App. 3d 726, 733 (1994), *abrogated on other grounds by Swick v. Liautaud*, 169 Ill.2d 504 (1996). Fright, horror, grief, shame, humiliation, and worry are not sufficient. *See Adams*, 292 Ill. App. 3d at 38. Only "severe distress, unendurable by

a reasonable person, . . . is actionable under Illinois law." *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1030 (7th Cir. 2006).

**V.     Count V Fails Because There Was No Unauthorized and Offensive Intrusion Upon Seclusion.**

Finally, C.G. attempts to recast her IIED claim as a complaint for intrusion upon seclusion. But that characterization of the events is equally bankrupt. The tort requires pleading: (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion must be offensive or objectionable to a reasonable person; (3) the matter upon which the intrusion occurs must be private; and (4) the intrusion causes anguish and suffering. *Jacobson v. CBS Broad., Inc.*, 2014 IL App (1st) 132480, ¶ 47.

**Seclusion.** At the outset, C.G.'s pleading clearly alleges that there was no "seclusion" to be intruded upon. "The core of this tort is the offensive prying into *the private domain of another*." *Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d 411, 417 (1989) (emphasis added). A tort exists "only when he has intruded into *a private place*, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Restatement (Second) of Torts § 652B (1977) (emphasis added). A school locker room is not a private place. *See Vernonia*, 515 U.S. at 657, 656; *Doe by and through Doe*, 897 F.3d at 527.

**Authorization.** In addition, C.G. cannot show that the defendants' actions were *unauthorized* because they were done as part of and in the course of their job responsibilities as school administrators. *See Mucklow v. John Marshall Law Sch.*, 176 Ill. App. 3d 886, 894 (1988) (law professor's access of student file was not actionable because he was acting in his capacity as teacher). Most telling here is *Peoples v. Oswego Community School District*, 2020 WL 1330652, at *9 (N.D. Ill. Mar. 22, 2020), where the court rejected a claim against a DCFS investigator who strip-searched a student to check for signs of abuse because the investigator's conduct was

undertaken "as part of her job as an investigator" and was thus not unauthorized. Here, it was part of Van Treese and Ford's job duties to protect student safety and ensure that there were not any problems disrupting student instruction. Because they supervised the locker room as part of their jobs as school administrators (FAC ¶¶ 24–25), their conduct was not unauthorized.

**Offensiveness.** The FAC does not allege objectively offensive conduct for the same reasons that the administrators' actions were not outrageous or extreme. Students' privacy interests are "different in public schools than elsewhere," given "the schools' custodial and tutelary responsibility for children." *Vernonia*, 515 U.S. at 656. Privacy expectations are further reduced in "[p]ublic school locker rooms." *Id.* at 657; *see also Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 605 (6th Cir. 2005) (holding that presence in a locker room lowered the student's privacy expectations); *Doe by and through Doe*, 897 F.3d at 531 (noting that locker rooms are "by definition and common usage, just not that private"). In that context, the alleged conduct cannot be considered offensive.

In any event, the conduct alleged in the Complaint cannot be construed as highly offensive or objectionable. Van Treese and Ford's presence in the girls' locker room was to enforce school rules and District policy. *See Howard v. Yakovac*, 2006 WL 1207615, at *9–10 (D. Idaho May 2, 2006) (holding that alleged acts were not offensive to a reasonable person because defendant school officials acted to enforce school rules). Although C.G. alleges that the administrators coerced her to comply with school rules using threats of punishment and their authority, such conduct is perfectly acceptable for educators, who must ensure compliance with school rules for the safety of the student and the broader student body. *See Vernonia*, 515 U.S. at 656. For these reasons, the Court should dismiss the intrusion upon seclusion claim against Van Treese and Ford.

**VI. The Illinois Tort Immunity Act Bars Plaintiff's Tort Claims. (Counts IV and V).**

C.G.'s state law tort claims against Ford and Van Treese are in any event barred under the Illinois Tort Immunity Act. Section 2–201 of the Act provides: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2–201. Immunity under Section 2-201 of the Act applies to both negligent and willful and wanton misconduct. *In re Chi. Flood Litig.*, 176 Ill. 2d 179, 196 (1997).

Although affirmative defenses are normally not cognizable on a motion to dismiss, this case falls into the well-recognized exception for situations where the complaint itself pleads "everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). As explained below, the FAC does exactly that.

To establish that an employee is subject to immunity under Section 2-201, the defendant must plead and prove: (1) she holds either a position involving the determination of a policy or a position involving the exercise of discretion, and (2) she engaged in both the determination of policy and the exercise of discretion when performing the act or omission from which the plaintiff's injury resulted. *Harinek v. 161 N. Clark St. Ltd. P'ship*, 181 Ill. 2d 335, 341 (1998), *abrogated on other grounds by Coleman v. E. Joliet Fire Prot. Dist.*, 2016 IL 117952. Policy decisions are "those that require the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests." *Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 197 Ill.2d 466, 472 (2001). "[D]iscretionary acts are those which are unique to a particular public office, [in contrast to] ministerial acts [which] are those . . . a person performs on a given state of facts in a prescribed manner, in obedience to

the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Twp.*, 167 Ill.2d 466, 474 (1995).

The FAC pleads both elements of the tort immunity defense. First, it pleads that Ford and Van Treese are public employees "with authority and responsibility for . . . administration" and who "enforce[] the School District's policies, including the policy at issue here." (FAC ¶¶ 24–25). They are in fact "responsible for the policy." (*Id.* ¶ 26). "Public school board members, school administrators, and district administrators serve in positions that involve formulating policy and/or exercising discretion." *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, 2024 WL 1254569, at *14 (S.D. Ill. Mar. 25, 2024); *see also Harrison*, 197 Ill.2d at 472 (implicitly holding that school principal satisfied the first requirement for immunity under Section 2-201).

Second, the FAC pleads that defendants were formulating policy and exercising discretion when they engaged in the alleged conduct. The FAC acknowledges that Ford and Van Treese's actions were in furtherance of the District's policy, which permits transgender female students "to access female-only spaces, including restrooms, locker rooms, changing rooms, and showers, based solely on their self-declared gender preference." (FAC ¶ 44). Such decisions clearly require administrators to balance competing interests. *See Harinek*, 181 Ill.2d at 342 (fire marshal's direction to plaintiff to stand in corridor near door during a fire drill represented a balancing of interests and was thus undertaken in determining policy); *Albers v. Breen*, 346 Ill. App. 3d 799, 808 (2004) (decision involving "disciplinary matter" was policy decision because it considered "competing interests [like] the confidentiality of his information source, the appropriate level of punishment, the concerns of all the children's parents, [and] the impact of his decision on the student body generally" and made "a judgment as to what balance to strike among them").

14

The actions are also alleged to have required exercise of discretion. "[T]he making of a decision about whether or how to perform an act is generally discretionary." *Arteman v. Clinton Cmty. Unit Sch. Dist. No. 15*, 198 Ill.2d 475, 487 (2002). As school administrators, it was Ford and Van Treese's job to enforce school and District policy, but they had the discretion to do so in the manner they believed best for the students and school. *See Hascall v. Williams*, 2013 IL App (4th) 121131, ¶ 29 (actions relating to the enforcement of anti-bullying policy were discretionary). Where a school official chooses between multiple options, she is exercising discretion. *See Moore v. Bd. of Educ. of City of Chi.*, 300 F. Supp. 2d 641, 644–45 (N.D. Ill. 2004).

Here, the tortious acts alleged against Ford and Van Treese are clearly discretionary. For example, "protesting female students were summoned" to Van Treese's office. (FAC ¶ 36). Van Treese "dismissed their objections," and both Ford and Van Treese threatened them with disciplinary action. (*Id.* ¶¶ 37, 83(a)). Ford and Van Treese entered the girls' locker room and forced C.G. to change. (*Id.* ¶¶ 38–39). They subsequently "reinforc[ed] their demand for compliance." (*Id.* ¶ 40). Defendants, including the two individuals, "chose[ ]" to accommodate transgender students. (*Id.* ¶ 45). They failed to offer "less intrusive alternative[s]." (*Id.* ¶¶ 26, 85). Their retaliatory actions "were motivated by C.G.'s protected expression." (*Id.* ¶ 79). These allegations uniformly describe discretionary actions. Because the FAC pleads everything necessary to establish the defense under the Illinois Tort Immunity Act, Counts IV and V must be dismissed.

### <u>Conclusion</u>

For the reasons stated, Defendants Ford and Van Treese's Motion to Dismiss should be granted.

Dated: January 23, 2026                 Respectfully submitted,

JOANNA FORD and CATHY VAN TREESE

By:   */s/ Chris Gair*
*One of their Attorneys*

Chris Gair (#6190781)
Ingrid Yin (#6339857)
**Gair Gallo Eberhard LLP**
1 E. Wacker Drive, Suite 2600
Chicago, IL 60601
Tel: (312) 600-4900
cgair@gairgallo.com
iyin@gairgallo.com

Susan Best (#6302403)
Jessica Petrovski (#6339513)
Laura Knittle (#6313257)
**Gordon Rees Scully Mansukhani LLP**
1 N. Wacker Drive, Suite 1600
Chicago, IL 60606
Tel: (312) 565-1400
sjbest@grsm.com
jpetrovski@grsm.com
lknittle@grsm.com

## CERTIFICATE OF SERVICE

I, Chris Gair, an attorney of record, hereby state that on January 23, 2026, I electronically filed the forgoing document using the Court's CM/ECF Filing System, which will send electronic notice to all counsel of record.

*/s/ Chris Gair*