# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| C.G., a minor, by and through her<br>next friend and mother, NICOLE GEORGAS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:25-cv-13406 |
| | ) | |
| v. | ) | Judge: Rebecca Pallmeyer |
| | ) | |
| DEERFIELD PUBLIC SCHOOLS DISTRICT 109,<br>JOANNA FORD, in her official capacity as Assistant<br>Superintendent for Student Services for Deerfield Public<br>Schools District 109, and in her personal capacity, and<br>CATHY VAN TREESE, in her official capacity as<br>Associate Principal of Alan B. Shepard Middle School,<br>and in her personal capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTIONS TO DISMISS

Plaintiff C.G. respectfully submits this consolidated response in opposition to Defendant Deerfield Public Schools District 109's Rule 12(b)(6) Motion to Dismiss (ECF 39) ("District MTD") and Defendants Joanna Ford and Cathy Van Treese's Motion to Dismiss (ECF 40) ("Individual MTD") (collectively, "Motions").

Defendants' Motions sidestep the well-pleaded allegations in the First Amended Complaint (ECF 37) ("FAC"). The Motions deride the FAC's allegations as "overwrought rhetoric" (Individual MTD at 1), sanitize the coercion of a thirteen-year-old girl stripping to her underwear in front of a biological male as mere "enforcement" of a "gender-inclusive" policy (District MTD at 1–3), and insist—contrary to the FAC's explicit allegations—that no sex-based classification or constitutional violation exists.

Consistent with the Supreme Court's and the Seventh Circuit's repeated guidance, the question at the Rule 12(b)(6) stage is not whether Plaintiff will ultimately prevail, but whether she has plausibly alleged claims for relief. Here, accepting the well-pleaded factual allegations in the FAC as true and drawing all reasonable inferences in Plaintiff's favor—as the law requires—Plaintiff clearly meets that standard. Defendants' Motions should therefore be denied in their entirety.

## I.      INTRODUCTION

This case does not seek to exclude any student from school or from educational participation. Nor does it ask this Court to invalidate all policies accommodating transgender students. Instead, it presents a narrower and constitutionally significant question: whether a public school may compel a female middle school student to undress in the presence of a biological male, over her objection and under threat of discipline, pursuant to a policy that requires no objective verification, no medical documentation, no consistency of presentation, and no showing of enduring gender identity.

The FAC alleges that Defendants did precisely that. It alleges that C.G. was forced to remove her outer garments in the girls' locker room in the presence of a biological male student; that when she protested, she was threatened with discipline; and that administrators entered and supervised the locker room to ensure compliance. (FAC ¶¶ 35–40). Those allegations must be taken as true at this stage.

Defendants' motions rest on two central propositions: first, that binding Seventh Circuit precedent forecloses Plaintiff's claims; and second, that no clearly established constitutional or statutory rights were implicated. Neither proposition withstands scrutiny under Rule 12(b)(6).

Defendants' Motions largely repackage arguments previously advanced in opposition to

Plaintiff's request for preliminary injunctive relief. This Court's denial of preliminary relief, however, does not resolve the merits and does not supply a basis for dismissal. A preliminary injunction is an "extraordinary remedy" subject to a heightened standard. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

By contrast, at the pleading stage, Plaintiff need only allege facts that render her claims plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Measured against that standard—and mindful of the Seventh Circuit's consistent insistence on doctrinal precision and restraint—all of Plaintiff's claims easily survive. Defendants' motions repeatedly attempt to substitute their own factual characterizations—including assertions regarding the other student's gender identity and the nature of the District's internal processes—for the allegations actually pleaded. At this stage, the Court is confined to the FAC.

## II.     STATEMENT OF FACTS

For purposes of the Motions, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in Plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

C.G. was a thirteen-year-old female student at Alan B. Shepard Middle School in Deerfield, Illinois. (FAC ¶¶ 1, 32). On February 24, 2025, she and her female classmates entered the girls' locker room to change for physical education class. Standing among the rows of lockers was a biological male student whom C.G. knew from school and her neighborhood; he lived across the street, was dressed as a male, talked as a male, and looked as a male. (FAC ¶¶ 2-3). C.G. and several other girls froze, protested silently by refusing to change out of their regular clothes, and kept only their athletic shoes on to protect their dignity. (FAC ¶ 3). The next day, February 25, 2025, some protesting girls (not including C.G.) were summoned to Defendant Van Treese's

3

office. Van Treese dismissed their privacy concerns, issued an ultimatum to change "in front of" the male student or face discipline, and accused them of "misgendering." (FAC ¶¶ 4, 36-37). Later that same day, Defendant Ford (Assistant Superintendent) and Van Treese, accompanied by other adults, followed the girls into the locker room, stood watch, and coerced C.G. and her classmates to change while the biological male remained present. C.G. was forced to strip to her sports bra and underwear in the crowded, humid room under the gaze of these adults and the male student. (FAC ¶¶ 5, 38-39). Her heart pounded; she trembled and tried to shield herself. (FAC ¶ 5). On February 27, 2025, the male student was again present and the administrators again supervised to ensure compliance. C.G. fled the locker room in tears, called her mother, and told her, "I can't do this. They're making me change in front of him." (FAC ¶ 6).

The principal suggested that uncomfortable girls simply switch PE classes rather than accommodate the male student elsewhere. (FAC ¶ 7). The trauma persisted for months: nightmares, dread of the locker room, loss of confidence, and eroded trust in school officials. (FAC ¶ 8). C.G. stopped changing for PE, her attendance suffered, and on October 14, 2025, her mother withdrew her for homeschooling. (FAC ¶ 9). Persistent inquiries revealed the District's policy— adopted to "strictly abide by" non-regulatory Illinois guidance—allows biological males access to female-only spaces (restrooms, locker rooms, changing rooms, showers) based merely on a privately expressed preference, with no objective assessment of gender dysphoria or even subjective manifestation of female identity. (FAC ¶ 10). Single-use gender-neutral options were available but rejected; instead, the District chose to abandon the inviolability of female-only spaces. (FAC ¶¶ 11-14). This policy and its enforcement by Ford and Van Treese form the basis of all claims.

### III.    STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the claims. *Skinner v. Switzer*, 562 U.S. 521, 529–31 (2011). Dismissal is appropriate only where a complaint fails to allege sufficient factual matter to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570. The Court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678.

### IV.    ARGUMENT

**A.    Plaintiff Plausibly Alleges Sex Discrimination Under the Equal Protection Clause (Count I) and Title IX (Count II).**

Because Defendants' Motions rest on a threshold misreading of controlling precedent and the legal status of sex-segregated intimate spaces, the Court must first address—and reject—that premise before turning to Plaintiff's sex-discrimination claims. Ignoring the longstanding constitutional and statutory legitimacy of sex-segregated intimate spaces, Defendants insist that binding Seventh Circuit precedent compels dismissal of constitutional and statutory sex-discrimination claims whenever a school district permits cross-sex access to intimate facilities based on self-declared preferences. (District MTD at 5–11). That premise is incorrect. Properly understood, the governing cases neither mandate the policy Defendants defend nor foreclose Plaintiff's sex-discrimination claims at the pleading stage.

With the Seventh Circuit having vacated its decision in *D.P. by A.B. v. Mukwonago Area School District*, 140 F.4th 826 (7th Cir. 2025), *vacated and reh'g granted*, 2025 WL 1794428 (7th Cir. June 30, 2025), appeal dismissed, No. 23-2568 (7th Cir. Aug. 26, 2025), the only binding Circuit authority on the issue consists of *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017), and *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*,

75 F.4th 760 (7th Cir. 2023). Neither case announced a general rule requiring schools to abandon sex-segregated intimate facilities, nor did either case resolve the legality—under the Equal Protection Clause or Title IX—of a policy like the one Plaintiff challenges here.

Both *Whitaker* and *Martinsville* were decided against a settled constitutional and statutory backdrop recognizing the legitimacy of sex-segregated intimate spaces. As the Eleventh Circuit explained in *Adams v. St. Johns Cnty. Sch. Bd.*, 57 F.4th 791 (11th Cir. 2022) (en banc), sex-segregated bathrooms, locker rooms, and changing facilities are not relics of animus or stereotype, but lawful and historically entrenched responses to biological differences between males and females and the acute privacy interests those differences implicate—especially for minors in public schools. *Id.* at 798–804. This principle underlies Plaintiff's Equal Protection claim in Count I: sex-segregated intimate spaces are a permissible—and often necessary—means of protecting female students' bodily privacy. *Id.* at 804–06.

Title IX reflects the same foundational understanding, which directly informs Plaintiff's claim in Count II. Congress expressly recognized that sex separation in intimate settings is compatible with—and indeed contemplated by—Title IX. *See* 20 U.S.C. § 1686 ("Nothing contained in this chapter shall be construed to prohibit any educational institution receiving funds under this Act from maintaining separate living facilities for the different sexes."). The Department of Education's implementing regulations likewise provide that schools may offer "separate toilet, locker room, and shower facilities on the basis of sex," so long as they are comparable. *See* 34 C.F.R. § 106.33. These provisions confirm that Title IX does not require schools to eliminate sex-based separation in intimate spaces, and they frame Plaintiff's Title IX theory: Defendants' policy withdraws sex-based protections that Title IX affirmatively preserves.

It was within this firmly established framework—not in repudiation of it—

that *Whitaker* and *Martinsville* recognized narrow, fact-specific exceptions. In *Whitaker*, the Seventh Circuit repeatedly emphasized that the biological female student seeking access to boys' facilities had a consistent and enduring gender identity, a medical diagnosis of gender dysphoria, ongoing hormone treatment, legal name and gender-marker changes, and years of comprehensive social transition. 858 F.3d at 1042–45. Those facts were central to the court's Equal Protection and Title IX analyses, ensuring that the accommodation at issue would not be susceptible to opportunistic or inconsistent claims. *Id.* at 1052.

*Martinsville* likewise involved biological female students with persistent, medically supported male gender identities and no allegations that the accommodations they sought undermined other students' privacy in intimate spaces. 75 F.4th at 767–71. Critically, for both Counts I and II here, the *Martinsville* court did not hold that sex-segregated facilities are themselves suspect, nor that schools must permit biological males to access girls-only spaces. Instead, it evaluated a narrow exclusionary policy in light of a highly specific factual record.

Indeed, with *Mukwonago* no longer good law, no controlling Seventh Circuit case requires that a biological male student, even one who "consistently, persistently, and insistently" identifies as a girl, *Adams*, 57 F.4th at 807 (cleaned up), be granted access to a school's female-only facilities. It is an unremarkable proposition that female students are more vulnerable to "intrusion on bodily privacy" than male students in nominally sex-segregated spaces. *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 623 (4th Cir. 2020), as amended (Aug. 28, 2020) (Wynn, J., concurring).

Even if *Whitaker* and *Martinsville* can be read to apply to a male student seeking access to a school's female-only spaces, the FAC alleges facts that place this case well outside those narrow holdings. Instead, those well-pleaded factual allegations plausibly support liability under both constitutional and statutory frameworks. Plaintiff alleges that Defendants' policy permits

biological male students to access female-only restrooms, locker rooms, changing rooms, and showers based solely on a unilateral, unverified self-declaration—without medical documentation, without any showing of consistency over time, and without any requirement that the student present or live as female in other contexts. (FAC ¶ 10). As alleged, the policy applies to middle school students during a period of physical development when privacy expectations are at their apex, and it shifts the full burden of accommodation onto female students. (FAC ¶ 11–14). Those allegations directly underpin Plaintiff's Equal Protection claim (Count I) and her Title IX hostile-environment claim (Count II).

At the Rule 12(b)(6) stage, these allegations must be accepted as true. Defendants' attempt to dismiss both counts by labeling Plaintiff's injuries as "speculative" improperly collapses the pleading inquiry into a merits determination. (District MTD at 7, 11). The alleged harms flow directly from the structure of the policy itself: the elimination of female-only intimate spaces and their replacement with a regime that depends entirely on self-assertion. As *Adams* recognized— and as Title IX's text and regulations confirm—the purpose of sex-segregated intimate facilities is to prevent precisely these kinds of dignitary, psychological, and privacy harms before they occur. *Id.* at 802–03; *see* 34 C.F.R. § 106.33.

In short, Defendants ask this Court to treat *Whitaker* and *Martinsville* as having silently displaced both the Equal Protection Clause's recognition of sex-based privacy distinctions and Title IX's express preservation of sex-segregated intimate spaces. They did not. At most, those cases permit carefully cabined accommodations under extraordinary, fact-dependent circumstances. Plaintiff plausibly alleges that Defendants' policy discards those limiting principles and imposes sex-based burdens on female students in violation of both Count I and Count II.

**B.** **Plaintiff Plausibly Alleges Municipal Liability Against the District (Count I)**.

The District concedes the existence of an official policy but argues there can be no *Monell* liability because the policy is constitutional and there was no deliberate indifference. (District MTD at 4–5, 9). That argument fails at the pleading stage.

A municipality is liable under § 1983 when a constitutional deprivation is caused by (1) an express official policy, (2) a widespread custom, or (3) the act of a final policymaker. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). The FAC alleges exactly that.

It pleads an express District-wide policy that permits biological male students to access female-only locker rooms, restrooms, changing rooms, and showers based solely on a unilateral, unverified self-declaration of gender preference, with no medical documentation, no consistency requirement, and no alternative accommodation for objecting female students. (FAC ¶¶ 10, 44). The FAC further alleges that high-level administrators with delegated authority over student services and facility access — Defendants Ford and Van Treese — personally enforced that policy against C.G. by entering the girls' locker room, standing watch, and coercing her to undress to her sports bra and underwear in the presence of a biological male, all under threat of discipline. (FAC ¶¶ 24–26, 35–40).

These allegations are more than sufficient. The Seventh Circuit has repeatedly held that a plaintiff need not plead detailed evidentiary facts to survive dismissal on a *Monell* theory. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (collecting cases). It is enough to allege that the injury was caused by a municipal policy or decision attributable to a final policymaker. *Id.* Here, the FAC does both.

The District's suggestion that it was merely following non-regulatory state guidance (District MTD at 2, 9) does not defeat liability. A municipality cannot shield itself from § 1983

9

liability by pointing to state recommendations if the policy it adopted causes a constitutional violation. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379–80 (7th Cir. 2017) (en banc).

Because the FAC plausibly alleges that C.G.'s injury was caused by an official District policy and its deliberate enforcement by authorized officials, municipal liability is adequately pleaded. Dismissal of the District on Count I is unwarranted.

### C.     Qualified Immunity Does Not Warrant Dismissal of Individual Defendants.

Defendants Ford and Van Treese assert that both constitutional claims are barred by qualified immunity. (Individual MTD at 1, 7–8). Qualified immunity shields officials only if the right at issue was not clearly established such that every reasonable official would understand that what she is doing violates that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The clearly established right here is the constitutional interest in bodily privacy that protects minor female students from being compelled, over objection and under threat of discipline, to expose their partially nude bodies to a biological male in a school locker room under adult supervision. "[E]ven in locker rooms, students retain a significant privacy interest in their unclothed bodies." *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 496 (6th Cir. 2008) (cleaned up) (denying qualified immunity for video surveillance of middle school students in locker rooms).

Nothing in *Whitaker* or *Martinsville*—the cases on which the Individual Defendants rely through incorporation of the District's Motion (Individual MTD at 4)—clearly establishes that school officials may compel such exposure. Those cases addressed transgender students with documented gender dysphoria and consistent social/medical transition seeking access to opposite-sex facilities. *Whitaker*, 858 F.3d at 1042–45; *Martinsville*, 75 F.4th at 767–71. They did not address, let alone authorize, officials forcing a thirteen-year-old girl to strip to her sports bra and underwear in front of a biological male who presents and is known as male, while administrators stand watch to ensure compliance. (FAC ¶¶ 5, 38–39).

10

At a minimum, the FAC plausibly alleges a violation of clearly established privacy rights, and qualified immunity cannot be resolved in Defendants' favor at the Rule 12(b)(6) stage. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (courts may deny qualified immunity when a violation is clear on the pleaded facts); *see also White*, 829 F.3d at 844 (fact-intensive nature of the inquiry often precludes resolution on a motion to dismiss).

Defendants characterize their conduct as both mandatory enforcement of District policy and discretionary judgment consistent with Seventh Circuit precedent. (Individual MTD at 1–3, incorporating District MTD at 2–3). Either framing precludes dismissal here. If they were merely implementing an official District policy, that supplies the basis for municipal liability against the District. If they were exercising discretion in compelling C.G. to disrobe over her repeated objections, the specific factual context controls, and no Seventh Circuit precedent clearly authorizes such coercive conduct against a minor. Whether reasonable officials would have understood that compelling a thirteen-year-old girl to expose herself in this manner violated constitutional rights is a fact-bound inquiry that cannot be resolved on the face of the FAC.

### D. Plaintiff Plausibly Alleges First Amendment Retaliation (Count III).

To state a First Amendment retaliation claim, a plaintiff must allege (1) protected activity, (2) an adverse action that would deter a reasonable person from engaging in the protected activity, and (3) a causal connection between the protected activity and the adverse action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *see also Surita v. Hyde*, 665 F.3d 860, 878–79 (7th Cir. 2011) (emphasizing that the adverse-action inquiry focuses on whether the action is sufficiently serious to deter protected expression).

C.G.'s refusal on February 24, 2025, to undress in the girls' locker room—standing silently among her classmates, keeping her regular clothes on, and declining to change in the presence of

a biological male student—constitutes protected expressive conduct. The message was unmistakable: she objected to being required to expose her partially nude body in front of a biological male in a space traditionally reserved for female students. (FAC ¶¶ 3, 38). Expressive conduct receives First Amendment protection when it is "sufficiently imbued with elements of communication" and the intent to convey a particularized message is likely to be understood by viewers. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Here, C.G.'s silent protest—freezing in place and refusing to comply—was a clear, non-verbal rejection of the policy's application to her, akin to the armband protest in *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), where students' passive wearing of black armbands to oppose the Vietnam War was protected symbolic speech.

Nothing in *Tinker* or its progeny authorizes school officials to compel expressive compliance in intimate settings like a locker room. *Tinker* protects silent, passive expression absent material and substantial disruption of school activities or invasion of the rights of others. *Id.* at 509, 514. The FAC alleges no disruption from C.G.'s refusal—only discomfort among some students and administrators' insistence on enforcement. (FAC ¶¶ 3–6). Schools may not punish non-disruptive protest simply because it challenges an official policy; doing so would invert *Tinker*'s core holding that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Id.* at 506.

The FAC plausibly alleges adverse action. After C.G. and others protested by refusing to change, Defendant Van Treese summoned some girls (not including C.G. initially) and issued a "chilling ultimatum" to change "in front of" the male student or face discipline, while accusing them of "misgendering." (FAC ¶¶ 4, 36–37). On February 25, 2025, and again on February 27, 2025, Defendants Ford and Van Treese entered the locker room with other adults, stood watch,

and coerced compliance under supervision—creating an environment of compelled exposure and humiliation. (FAC ¶¶ 5, 6, 38–39). A credible threat of discipline, coupled with immediate coercive enforcement, constitutes adverse action at the pleading stage. *Surita*, 665 F.3d at 878 (holding that threats of discipline and other retaliatory conduct can deter protected speech); *see also Bridges*, 557 F.3d at 552 (act in retaliation of a constitutionally protected right is actionable).

Causation is also plausibly pleaded. The temporal proximity is immediate: the coercion occurred the very day after the initial silent protest (February 25, 2025) and repeated two days later (February 27, 2025), directly in response to the girls' refusal to comply. (FAC ¶¶ 3–6). Close timing between protected conduct and adverse action supports an inference of causation at the pleading stage. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (suspicious timing can establish causation for retaliation claims); *cf. Surita*, 665 F.3d at 879 (causation inferred from sequence of events).

Count III states a plausible claim for First Amendment retaliation. Defendants' actions— threatening discipline for "misgendering," entering the locker room to supervise undressing, and creating a coercive atmosphere—would deter a reasonable middle school student from engaging in similar non-disruptive protest. Because the FAC alleges protected expressive conduct, adverse retaliatory actions, and causation, dismissal of Count III is unwarranted.

### E. Plaintiff Plausibly Alleges Violations of State Law (Counts IV and V).

Under Illinois law, a claim for intentional infliction of emotional distress (IIED) requires three elements: (1) extreme and outrageous conduct by the defendant; (2) intent to cause severe emotional distress or knowledge that there is a high probability that such distress will result; and (3) severe emotional distress actually suffered by the plaintiff. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988); *see also Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21 (1992) (reaffirming the elements and noting that the conduct must go "beyond all possible bounds of decency" and be

"intolerable in a civilized community").

The FAC plausibly alleges each element. First, Defendants Ford and Van Treese—high-level school administrators with authority over student services and discipline—compelled a thirteen-year-old female student to undress to her sports bra and underwear in the girls' locker room while a biological male student (known to her as male from school and neighborhood, dressed/acting/presenting as male) remained present. This occurred after C.G. and others protested by refusing to change, and under explicit threats of discipline for "misgendering" or non-compliance. Administrators entered the locker room, stood watch with other adults, and supervised to ensure she stripped and changed in the crowded, humid space under their gaze and that of the male student. (FAC ¶¶ 4–6, 35–40). This conduct—coercing partial nudity of a minor in an intimate facility traditionally sex-segregated for privacy, over her objection, in response to her protest, and under adult supervision—meets the threshold for "extreme and outrageous" at the pleading stage.

Illinois courts recognize that the "extreme and outrageous" inquiry is highly fact-intensive and context-dependent. *McGrath*, 126 Ill. 2d at 88–89; *see also Brannum*, 516 F.3d at 496 (acknowledging minors' legitimate expectations of bodily privacy in school settings). Whether this specific conduct ultimately satisfies the "intolerable in a civilized community" threshold is a question of fact inappropriate for resolution on a Rule 12(b)(6) motion. *See Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277 (2003) (affirming denial of dismissal where allegations of coercive conduct created fact issues).

Under Illinois law, intrusion upon seclusion requires (1) an intentional intrusion upon another's solitude, seclusion, or private affairs, and (2) that the intrusion would be highly offensive to a reasonable person. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 33 (Ill.

2012); Restatement (Second) of Torts § 652B (1977).

The FAC alleges both elements. Defendants Ford and Van Treese intentionally intruded by compelling C.G.—a thirteen-year-old girl—to expose her partially nude body (to sports bra and underwear) in the girls' locker room, a private space reserved for female students, while a biological male student remained present and administrators stood watch to enforce compliance over her objection. (FAC ¶¶ 5, 38–39). This coercive facilitation of exposure in an intimate, sex-segregated setting constitutes an intentional intrusion. *Lawlor*, 2012 IL 112530, ¶ 33 (intrusion includes coercion or compelled inspection of private matters).

The intrusion would be highly offensive to a reasonable person: forcing a minor to partially undress under adult supervision in front of a biological male who presents as male, after she protested and expressed fear, invades acute bodily privacy expectations in a locker room. (FAC ¶¶ 3–6). Offensiveness is fact-intensive and generally a jury question at this stage. *See Feltmeier*, 207 Ill. 2d at 281–82.

Finally, the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 *et seq.*, does not bar Plaintiff's claims at this stage. While discretionary acts may be immune under § 2-201, willful and wanton misconduct—including intentional or reckless infliction of harm—is not protected. *See Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 373 (2003). The FAC's allegations of deliberate coercion despite known objection and distress plead willful and wanton conduct, negating immunity on the pleadings. Immunity is an affirmative defense, and dismissal is improper where the complaint sufficiently alleges facts defeating it. *Id.* at 377–78. Dismissal of state law claims is unwarranted.

**V. CONCLUSION**

Accepting the FAC's well-pleaded allegations as true, Plaintiff has plausibly alleged violations of the Equal Protection Clause, Title IX, the First Amendment, and Illinois law. *Whitaker* and *Martinsville* do not compel dismissal, particularly given their emphasis on enduring, medically documented gender identity—facts not alleged here.

The Motions seek premature merits determinations and factual recharacterization. Rule 12(b)(6) does not permit that. Accordingly, both Motions should be denied in their entirety.

Dated: February 23, 2026                                   Respectfully submitted,


                                                           /s/ Ajay Gupta
                                                           Ajay Gupta
                                                           The Law Offices of Ajay Gupta
                                                           2849 Bond Circle
                                                           Naperville, Illinois 60563
                                                           (630) 854-7194
                                                           ajguptaemail@gmail.com
                                                           N.D. Ill. Bar No. 190101

                                                           *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Ajay Gupta, an attorney, hereby state that on February 23, 2026, I electronically filed the foregoing document using the Court's CM/ECF Filing System, which will send electronic notice to all counsel of record.

/s/ Ajay Gupta
Ajay Gupta