| | | |
|---|---|---|
| C.G., a minor, by and through her next friend and mother, NICOLE GEORGAS, | ) ) ) | |
| | ) | Case No.: 25-CV-13406 |
| Plaintiff, | ) | |
| | ) | Judge Rebecca Pallmeyer |
| v. | ) | |
| | ) | |
| DEERFIELD PUBLIC SCHOOLS DISTRICT 109, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANTS FORD AND VAN TREESE'S MOTION TO DISMISS**

**Introduction**

Plaintiff's opposition is an exercise in rehashing the First Amended Complaint's ("FAC's") factual allegations (which the defendants do not dispute for purposes of this motion), repeating its overheated rhetoric (which the Court need not accept), propounding unsupported legal conclusions, misstating cases it cites, and sidestepping the defendants' arguments and cases.

For example, her equal protection argument entirely ignores the obvious point that there is no gender-based classification, assures the Court that the key Seventh Circuit rulings are limited to their facts without any support but wishful thinking, and grounds its entire position in a "foundational understanding"—whatever that might mean—in place of the well-accepted equal protection analytical regime. She makes no response at all to the defendants' arguments regarding her equal protection claims against them in their official capacities.

Her First Amendment opposition requires the Court to accept rhetoric as fact ("chilling ultimatum"), claims a deprivation based on cases outside of the unique school context that are

1

irrelevant here, and postulates a completely implausible motive for the supposed deprivation of her rights.

In response to the defendants' arguments for qualified immunity on both federal claims, C.G. offers little but an irrelevant argument on a claimed different constitutional right that she has not pled (and does not exist).

C.G.'s state law responses are no better. She makes no effort to respond to, and in fact, makes no mention at all of any of the cases cited in the defendants' motion. And her response to the Tort Immunity Act defense is characterized by a remarkable double feat of legerdemain: she ignores an Illinois Supreme Court case that holds that immunity extends to willful and wanton misconduct, and then cites a different Supreme Court case that makes no mention of willful and wanton misconduct at all as stating the contrary proposition.

These and the other defects laid out below require dismissal of all counts against Ford and Van Treese.

<u>**Argument**</u>

I. **The Court Should Dismiss C.G.'s Equal Protection Claims Against Ford and Van Treese in Their Individual and Official Capacities (Count I).**

Plaintiff ignores Ford and Van Treese's argument that the claims against them in their official capacities must be dismissed because such actions are really suits against the government entity. (*See* Ford & Van Treese MTD 4.) Arguments that are not addressed in a response brief may be deemed conceded or waived by the Court. *See Hostway Corp. v. JPMorgan Chase Bank, N.A.*, 2009 WL 2601359, at *6 (N.D. Ill. Aug. 24, 2009) (holding that by failing to address the defendant's argument in its response brief, the plaintiff "at least tacitly conceded the point"); *Lonzo v. Blanco*, 2022 WL 1211483, at *2 (N.D. Ill. Apr. 25, 2022) ("Plaintiff did not address defendants' immunity arguments in his response brief, and thus he has waived these claims.") (quoting *Bonte*

2

*v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). The Court should therefore dismiss the equal protection claim against Ford and Van Treese as duplicative of that against the District.

Regarding the claim against them in their individual capacities, C.G. posits as sex-based a classification that is entirely gender-neutral on its face. Contrary to her apparent belief, her assertion that the classification is sex-based is not a fact presumed true on a motion to dismiss. *See Bonte*, 624 F.3d at 465 (court is not required to accept as true a legal conclusion couched as a factual allegation); *see also Lee v. Poudre Sch. Dist.*, 2023 WL 8780860, at *16 (D. Colo. Dec. 19, 2023) (rejecting the plaintiffs' "attempt to frame this case as challenging a straightforward sex-based classification" because the plaintiffs' "cursory legal conclusion that the [defendants' actions were] based on sex discrimination is . . . not a well-pleaded factual allegation that the Court must take as true" (internal quotation mark omitted)). The classification here is plainly not sex-based. (*See* District MTD 5–9.)

Moreover, C.G. completely misconstrues the Seventh Circuit's decisions in *Whitaker by Whitaker v. Kenosha Unified School District No. 1 Board of Education,* 858 F.3d 1034 (7th Cir. 2017), and *A.C. by M.C. v. Metropolitan School District of Martinsville*, 75 F.4th 760 (7th Cir. 2023), which do not—as she contends—turn on whether a transgender student has a medical diagnosis or proof that she is transgender. (*See* C.G. Resp. 6–7.) The Seventh Circuit in *D.P. by A.B. v. Mukwonago Area School District*, 140 F.4th 826 (7th Cir. 2025), *vacated for panel re-hearing*, 2025 WL 1794428, *appeal dismissed,* No. 23-2568 (Aug. 26, 2025), specifically rejected that argument. *Mukwonago*, 140 F.4th at 833 ("Our decisions in *Whitaker* and *Martinsville* did not turn on the plaintiffs' ages, hormone treatments, or medical conditions."). That the decision was later vacated does not deprive it of persuasive value, *see Christianson v. Colt Indus. Operating Corp.*, 870 F.2d 1292, 1298–99 (7th Cir. 1989), especially since the Court was interpreting its own

prior opinions. For these and the reasons set forth in the District's main and reply briefs, Count I should be dismissed.

**II.  C.G. Does Not Adequately Plead a First Amendment Retaliation Claim (Count III).**

C.G.'s First Amendment rights must be considered "in light of the special characteristics of the school environment." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (quoting *Tinker v. Des Moines Ind. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). When considered in the school context, C.G.'s First Amendment retaliation claim fails because she does not plausibly allege that she experienced a deprivation of her rights in the context of the school's comprehensive authority to impose restrictions to avoid the potential for "substantial disruption of or material interference with school activities" or the invasion of the rights of others. (*See* Ford & Van Treese MTD 5 (quoting *Tinker*, 393 U.S. at 513–14)).

C.G. apparently recognizes (at times) that *Tinker* controls but claims that the FAC alleges no actual disruption justifying any restriction on speech. (*See* C.G. Resp. 12.) This argument is flawed in two respects. First, under *Tinker*, the school is not required to prove "that unless the speech at issue is forbidden[,] serious consequences will *in fact* ensue." *Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. # 204*, 523 F.3d 668, 673 (7th Cir. 2008) (emphasis in original). It is enough that the conduct "might reasonably have led school authorities to forecast" disruption. *Tinker*, 393 U.S. at 514. Second, the FAC in fact recognizes that the protest caused a disruption in the academic program and effectively reduced the protesting girls' participation in class. (FAC ¶¶ 3, 35 (changing only into gym shoes allowed C.G. only to maintain "some" participation).) C.G.'s First Amendment rights do not require the defendants to "tolerate student speech that is inconsistent with [the school's] 'basic educational mission.'" *Brandt v. Bd. of Educ. of City of Chi.*, 480 F.3d 460, 467 (7th Cir. 2007) (quoting *Hazelwood Sch. Dist.*, 484 U.S. at 266).

In addressing the deprivation question, however, C.G. steers away from *Tinker* and the school setting and relies on two Seventh Circuit cases—*Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009), and *Surita v. Hyde*, 665 F.3d 860, 878–79 (7th Cir. 2011)—in support of her contention that "a credible threat of discipline, coupled with immediate coercive enforcement, constitutes adverse action at the pleading stage." (C.G. Resp. 13.) Whether or not that is the rule in other settings, like prison discipline (*Bridges*) or police enforcement actions (*Surita*), those cases have no relevance to a threat of discipline in a school setting, where school officials "have a special interest in regulating speech that 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others.'" *Mahanoy Area Sch. Dist. v. B.L. by and through Levy*, 594 U.S. 180, 188 (2021) (quoting *Tinker*, 393 U.S. at 513). "These special characteristics call for special leeway when schools regulate speech that occurs under its supervision." *Id.*

Even putting aside the unique dynamics present in a school setting, C.G.'s reliance on *Bridges* and *Surita* is misguided given that those cases involved much more egregious actions than those alleged here. The plaintiff in *Bridges* was a prisoner who alleged retaliation in the form of "delays in his incoming and outgoing mail; harassment by a guard kicking his cell door, turning his cell light off and on, and opening his cell trap and slamming it shut in order to startle him when he was sleeping; unjustified disciplinary charges; and improper dismissal of his grievances." 557 F.3d at 552. Similarly, in *Surita*, the police informed the plaintiff that they were enforcing a never-used ordinance against her and requiring her to pay a $1,500 fee and warned her that failure to comply with the ordinance would result in a violation of law and denial of future permit applications. 665 F.3d at 878–79. Those cases—involving legal, financial, and physical threats—have nothing in common with the situation in this case.

Moreover, C.G.'s First Amendment claim must be dismissed because she cannot satisfy the retaliatory motive element. (*See* Ford & Van Treese MTD 7.) C.G. argues that the FAC sufficiently pleads that Ford and Van Treese's actions were motivated by C.G.'s expressive conduct because of the temporal proximity between the expressive conduct and the alleged adverse actions. (*See* C.G. Resp. 13.) But the cases C.G. cites cannot help her here, where temporal proximity is *the only factor* suggesting a connection between the alleged adverse actions and the expressive conduct. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012); *Surita*, 665 F.3d at 878–79. As the Seventh Circuit stated in *Kidwell*, "suspicious timing will 'rarely be sufficient in and of itself to create a triable issue.'" 679 F.3d at 966 (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005). This is a classic example of the *post hoc ergo propter hoc* fallacy, which "is not a good way to prove causation." *See Musabelliu v. Gonzales*, 442 F.3d 991, 994 (7th Cir. 2006).

III. **C.G. Does Not Show That the Defendants Violated Clearly Established Law, a Requirement to Defeat Qualified Immunity on Her Federal Claims (Counts I and III).**

"Public officials performing discretionary functions are entitled to qualified immunity from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997) (internal citation and quotations omitted). As explained in Sections I and II, C.G. cannot establish that Ford or Van Treese's conduct violated her constitutional rights under the Equal Protection Clause or the First Amendment. For that reason she cannot show that a "reasonable official would understand that [the defendants' actions] violate[d]" her constitutional rights. *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (citation omitted). The Court can dismiss both of C.G.'s federal claims against Ford and Van Treese because they are entitled to qualified immunity on those claims. (*See* Ford & Van Treese MTD 7–8.)

Instead of addressing the defendants' arguments, C.G. argues that qualified immunity does not apply because students have constitutional interests in bodily privacy that were violated by the defendants' actions. (*See* C.G. Resp. 10–11.) But any bodily privacy interest that C.G. has is irrelevant to her federal claims in this case, which arise under the Equal Protection Clause and the First Amendment. The qualified immunity inquiry looks at "whether existing law clearly established *the right [the plaintiff] alleges [the defendants] violated*," *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (emphasis added), not some other right that the plaintiff may have. C.G. must show that it was clearly established that the defendants' particular actions in this case violated the Equal Protection Clause or First Amendment.

Even if her privacy rights were relevant here (they are not), the Supreme Court has cautioned courts against "defin[ing] clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id.* (emphasis in original). It is not sufficient for C.G. to reference some vague conception of bodily privacy, especially because "[t]he constitutional right to privacy is not absolute." *Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 528 (3d Cir. 2018). Personal privacy concerns must be balanced against other important government interests, including protecting transgender students from discrimination. *Id.* at 528–29. For these reasons, the court in *Doe* rejected the plaintiffs' constitutional privacy claim challenging a school district policy that allowed students to use locker rooms and bathrooms consistent with their gender identity. *Id.* at 526–27.

*Brannum v. Overton County School Board*, 516 F.3d 489, 496 (6th Cir. 2008), cited by C.G., is not on point. It addressed an entirely different situation—videotaping students in a school locker room. The *Brannum* court recognized that students' expectations of privacy are lower than

those of the general population, particularly in school locker rooms. It nevertheless found that the students' reasonable expectations of privacy under the Fourth Amendment were invaded because "[v]ideo surveillance is inherently intrusive." *Id.* The court's decision was based in substantial part on the fact that the students were videotaped and thus says nothing about whether the defendants' particular actions *in this case* violated C.G.'s clearly established rights.

**IV.     Plaintiff Does Not Dispute That She Cannot Plead All Elements of a Claim for Intentional Infliction of Emotional Distress ("IIED") (Count IV).**

The parties agree that an IIED claim requires C.G. to plead the following elements: (1) the conduct involved was extreme and outrageous; (2) the actor either intended the conduct to inflict severe emotional distress or knew there was at least a high probability the conduct would cause severe emotional distress; and (3) the conduct did in fact cause severe emotional distress. (*See* Ford & Van Treese MTD 8; C.G. Resp. 13.) Ford and Van Treese's motion to dismiss argues that the FAC fails to plead all three elements. (*See* Ford & Van Treese MTD 8–11.)

In her response brief, C.G. addresses only one of the three elements for a claim for IIED: "extreme and outrageous conduct." (*See* C.G. Resp. 14.) She does not address the fact that the FAC fails to plead the requisite intent element for such a claim. (*See* Ford & Van Treese MTD 10.) Nor does she acknowledge any of the cases the defendants cite that hold that the kind of emotional distress alleged in the FAC is, as a matter of Illinois law, insufficient to constitute severe emotional distress. (*See id.* at 10–11.) C.G. therefore effectively concedes failure to plead two of the three elements of the tort. *See Hostway Corp.*, 2009 WL 2601359, at *6; *Lonzo*, 2022 WL 1211483, at *2. The Court can dismiss C.G.'s IIED claim on these grounds.

Even with respect to the "extreme and outrageous conduct" element, C.G. fails to address the cases cited by Ford and Van Treese that hold that extreme and outrageous conduct requires allegations of "systematic and intentional actions designed to humiliate the plaintiff"—allegations

that are completely missing from the FAC. (*See* Ford & Van Treese MTD 8–9 (quoting *Piech v. Arthur Andersen & Co.*, 841 F. Supp. 825, 832 (N.D. Ill. 1994)). That aside, to be considered extreme and outrageous, the defendant's conduct "must be so extreme as to *go beyond all possible bounds of decency and . . . be regarded as intolerable in a civilized community.*" *Taliani v. Resurreccion*, 2018 IL App (3d) 160327, ¶ 26 (emphasis added). C.G. ignores this standard. She also ignores that such claims are frequently dismissed at the pleading stage. *See Douglas v. Lofton*, 2013 WL 2156053, at *10 (N.D. Ill. May 17, 2013). It is not merely that she avoids the arguments; she does not even try to address any of these cases. Nor does she cite any of her own cases involving extreme or outrageous conduct in similar situations. (*See* C.G. Resp. 14.)

Dismissal of an IIED claim is appropriate where, as here, the plaintiff fails to plausibly plead a claim, even when accepting all of the allegations in the complaint as true. *See, e.g., D.C. v. Pittsburgh Pub. Schs.*, 415 F. Supp. 3d 636, 665–66 (W.D. Pa. 2019) (dismissing IIED claim on motion to dismiss because allegations of handcuffing and restraining student in classroom was not sufficiently extreme or outrageous); *Nardella v. Leyden High Sch. Dist. 212*, 2016 WL 3418571, at *1, 3 (N.D. Ill. June 22, 2016) (dismissing IIED claim on motion to dismiss because alleged "ongoing and punitive" humiliation of student based on his disability was not sufficiently extreme or outrageous). This case provides a paradigm example of an IIED claim that must be dismissed for failure to allege sufficiently extreme and outrageous conduct.

## IV. Plaintiff Does Not Dispute Her Failure to Plead All Elements of a Claim for Intrusion Upon Seclusion (Count V).

At the outset, C.G.'s response brief contains a misstatement of law with respect to the elements of an intrusion upon seclusion claim. She cites *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 33 (2012), in support of her contention that an intrusion claim has only two elements: "(1) an intentional intrusion upon another's solitude, seclusion, or private affairs,

and (2) that the intrusion would be highly offensive to a reasonable person." (C.G. Resp. 14–15.) But *Lawlor* does not enumerate the elements of an intrusion claim. The defendant in *Lawlor* had conceded those points, and the court addressed only whether the plaintiff had sufficiently established an agency relationship between the defendant and the third party who committed the alleged intrusion. *Id.* ¶ 40.

As outlined in Ford and Van Treese's motion to dismiss, an intrusion upon seclusion claim requires that the intrusion be unauthorized and that it be made upon another's private affairs. (*See* Ford & Van Treese MTD 11–12.) Again, C.G. completely fails to address the arguments and cases in the individual defendants' motion to dismiss that show that C.G. cannot plead either requirement. (*See* C.G. Resp. 14–15.) The Court can dismiss C.G.'s claim on these concessions alone.

But even if C.G. had not effectively conceded these points, her seclusion claim fails because the FAC does not allege conduct that is highly offensive to a reasonable person. (*See* Ford & Van Treese MTD 12.) C.G. merely asserts the legal conclusion without a single reference to an analogous case. (*See* C.G. Resp. 15.) And she ignores the cases cited in the motion to dismiss that hold that students have lowered expectations of privacy in school locker rooms (*see* Ford & Van Treese MTD 12), and that an administrator's actions are not highly offensive if they are done with the purpose to enforce school rules and District policy (*id.*). C.G.'s intrusion upon seclusion claim thus fails on every element.

## V. Plaintiff Grossly Mischaracterizes the Law Under the Illinois Tort Immunity Act (Counts IV and V).

The Court can also dismiss the state law claims because the FAC itself pleads "everything necessary to satisfy the affirmative defense" under Section 2-201 of the Illinois Tort Immunity Act. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). C.G. does not address any of the

defendants' arguments or cases that show that the FAC pleads all of the elements for immunity under the Illinois Tort Immunity Act. (*See* Ford & Van Treese MTD 13–15.)

Instead, she argues that the defendants' conduct in this case constitutes willful and wanton misconduct, which she contends is not covered under the Act. (*See* C.G. Resp. 15.) This is just not true. As the Illinois Supreme Court has squarely held, Section 2-201 of the Act does apply to willful and wanton misconduct. *In re Chi. Flood Litig.*, 176 Ill. 2d 179, 196 (1997). C.G. unaccountably fails to address *Chicago Flood*, even though it was cited in the motion to dismiss (*see* Ford & Van Treese MTD 13), or any of its subsequent decisions reaffirming that immunity under Section 2-201 applies to willful and wanton misconduct. *See, e.g.*, *Strauss v. City of Chicago*, 2022 IL 127149, ¶ 59 ("Immunity under section 2-201 is absolute, covering both negligent and willful and wanton conduct.") (quoting *Monson v. City of Danville*, 2018 IL 122486, ¶ 29); *Ries v. City of Chicago*, 242 Ill. 2d 205, 223, 227 (2011) (any decisions reading a willful and wanton exception into Section 2-201 is no longer good law).

C.G.'s reliance on *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 373 (2003), is either intentional mischaracterization or gross incompetence on her attorney's part. *Van Meter* does ***not*** say that Section 2-201 does not apply to willful and wanton misconduct. The Illinois Supreme Court's conclusion that the lower courts erred in applying immunity in that case was based on the fact that the defendants "did not meet their burden . . . to establish that their actions were the result of a policy decision and discretionary within the meaning of section 2–201 of the Tort Immunity Act." *Id.* at 380. The Court did not even remotely suggest that immunity did not apply because the plaintiff alleged willful and wanton misconduct. In fact, in *Van Meter*, the Court discusses its prior decision in *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466 (2001), where it held that the Section 2-201 immunized the defendant against the plaintiff's

allegations of willful and wanton misconduct. Even a cursory review of the *Van Meter* Court's summary of *Harrison* should have made clear to counsel that this legal contention was not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b)(2); *see also Van Meter*, 207 Ill. 2d at 375–76.

## Conclusion

For the foregoing reasons, as well as those stated in the District's briefs, Ford and Van Treese respectfully request that the Court grant its motion to dismiss.

Dated: March 13, 2026

Respectfully submitted,

JOANNA FORD and CATHY VAN TREESE

By:    */s/ Chris Gair*
        *One of their Attorneys*

Chris Gair (#6190781)
Ingrid Yin (#6339857)
**Gair Gallo Eberhard LLP**
1 E. Wacker Drive, Suite 2600
Chicago, IL 60601
Tel: (312) 600-4900
cgair@gairgallo.com
iyin@gairgallo.com

Susan Best (#6302403)
Jessica Petrovski (#6339513)
Laura Knittle (#6313257)
**Gordon Rees Scully Mansukhani LLP**
1 N. Wacker Drive, Suite 1600
Chicago, IL 60606
Tel: (312) 565-1400
sjbest@grsm.com
jpetrovski@grsm.com
lknittle@grsm.com

**<u>CERTIFICATE OF SERVICE</u>**

  I, Chris Gair, an attorney of record, hereby state that on March 13, 2026, I electronically filed the forgoing document using the Court's CM/ECF Filing System, which will send electronic notice to all counsel of record.

                  *<u>/s/ Chris Gair</u>*