**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| C.G., a minor, by and through her next friend and mother, NICOLE GEORGAS, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:25-cv-13406 |
| v. | ) ) | Honorable Rebecca R. Pallmeyer |
| DEERFIELD PUBLIC SCHOOLS DISTRICT 109, et al., | ) ) ) | |
| Defendants. | ) | |

**DEFENDANT DEERFIELD PUBLIC SCHOOLS DISTRICT 109'S REPLY**
**IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS**

Plaintiff's Response in Opposition to Defendants' Motions to Dismiss (Doc. 42, "Response" or "C.G. Resp.") attempts to salvage her claims under the Fourteenth Amendment Equal Protection Clause and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX") by disguising her own privacy concerns as recognized constitutional and statutory violations. (C.G. Resp. § IV(A)). In doing so, Plaintiff ignores the gender-neutral language of the District's policy, which is properly considered at the Rule 12(b)(6) stage, misconstrues binding legal precedent, and diverts attention from the dispositive question before the Court: whether the First Amended Complaint (Doc. 37, "FAC") plausibly alleges that the District's policy treats female students differently on the basis of sex in violation of the Equal Protection Clause and Title IX.

It does not. The District's policy applies equally to all students, draws no sex-based classifications, and does not impose different rules or deny access to any student based on sex. Because the FAC fails to plausibly allege sex-based discrimination under either the Equal Protection Clause or Title IX, Counts I and II fail as a matter of law and should be dismissed.

<u>**Argument**</u>

**I.**     **The Court Should Dismiss Counts I and II Because Plaintiff Fails to Allege Sex Discrimination Under the Equal Protection Clause and Title IX.**

In its Motion to Dismiss (Doc. 39, "Motion" or "District MTD"), the District demonstrated that Plaintiff's Equal Protection and Title IX claims fail because the challenged policy does not classify students based on sex or otherwise discriminate on that basis. (District MTD 4–12). Without a sex-based classification or plausible allegations of disparate treatment based on sex, Plaintiff cannot state a claim under the Equal Protection Clause or Title IX. Moreover, even if the policy did include a sex-based classification and was subject to an Equal Protection analysis, it would withstand heighted scrutiny. (*Id.* at 6–9).

Plaintiff's Response does not meaningfully address these dispositive points.[1] Instead, Plaintiff attempts to recast Seventh Circuit precedent and relies on out-of-circuit authority to argue that schools must maintain sex-segregated facilities based on sex assigned at birth. (C.G. Resp. 5–8). But nothing in Plaintiff's Response changes the central fact: the District's policy is facially neutral and applies equally to all students. Because the policy does not treat students differently based on sex, Plaintiff fails to plausibly allege sex discrimination under the Equal Protection Clause and Title IX, and the Seventh Circuit precedent supports dismissal of Plaintiff's claims.

**A. Equal Protection Clause**

***1.   Plaintiff Fails to Identify Any Sex-Based Classification.***

The Equal Protection Clause prohibits governmental action that treats individuals differently based on protected characteristics such as sex. *City of Cleburne v. Cleburne Living Ctr.,*

---

[1] Plaintiff does not respond to Defendant's argument that its neutral policy cannot be the basis of her Equal Protection or Title IX claim. In addition, Plaintiff fails to respond to Defendant's discussion on the level of scrutiny applied to the challenged policy. Arguments that are not addressed in a response brief may be deemed conceded by the Court. *See Hostway Corp. v. JPMorgan Chase Bank, N.A.*, 2009 WL 2601359, at *6 (N.D. Ill. Aug. 24, 2009); *United States ex rel. Soulias v. Nw. Univ.*, 2013 WL 3275839, at *3 (N.D. Ill. June 27, 2013).

473 U.S. 432, 439 (1985). Accordingly, the threshold question in any Equal Protection analysis is whether the challenged policy classifies individuals based on characteristics like sex. *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.,* 919 F.3d 1003, 1010 (7th Cir. 2019). Here, Plaintiff fails to identify any such classification. The District's policy applies equally to all students and does not prohibit conduct for one that it permits for another. (District MTD 7). Because the policy does not draw distinctions based on sex, it does not trigger heightened scrutiny and cannot support a sex discrimination claim under the Equal Protection Clause. *See F.F. v. Valley View Cmty. Unit Sch. Dist. 365U,* No. 25-CV-09112, 2025 WL 2785372, at *4 (N.D. Ill. Sept. 30, 2025).

### 2. *Plaintiff's Interpretations of Whitaker and Martinsville Are Wrong.*

Plaintiff attempts to avoid this deficiency by arguing that the Seventh Circuit's decisions in *Whitaker by Whitaker v. Kenosha Unified School District No. 1 Board of Education,* 858 F.3d 1034 (7th Cir. 2017), and *A.C. by M.C. v. Metropolitan School District of Martinsville*, 75 F.4th 760 (7th Cir. 2023) were decided against a "settled constitutional backdrop" recognizing the legitimacy of sex-segregated facilities to "protect[] female students' bodily privacy." (C.G. Resp. 6–7). According to Plaintiff, those decisions created narrow exceptions only for transgender students with medical diagnoses or other evidence of a "consistent and enduring gender identity." (*Id*.). Nothing in those decisions supports Plaintiff's interpretation.

Both *Whitaker* and *Martinsville* addressed policies that explicitly classified students based on sex and therefore triggered heightened scrutiny. *Whitaker,* 858 F.3d at 1051-52; *Martinsville*, 75 F.4th at 764. The Seventh Circuit held that such classifications likely discriminated against transgender students in violation of the Equal Protection Clause. *Whitaker,* 858 F.3d at 1051-52; *Martinsville,* 75 F.4th at 772. This case presents the opposite situation. The District's policy does not classify students based on sex and applies equally to all students. Thus, in line with the

reasoning of *Whitaker* and *Martinsville*, the District's policy does not discriminate against any student in violation of the Equal Protection Clause. Plaintiff's request to exclude certain students based on sex would directly conflict with Seventh Circuit precedent.

In addition, *Whitaker* and *Martinsville* do not—as Plaintiff contends—turn on whether a transgender student has a medical diagnosis or proof that she is transgender. (C.G. Resp. 6–7). The Seventh Circuit in *D.P. by A.B. v. Mukwonago Area Sch. Dist.*, 140 F.4th 826 (7th Cir. 2025), *vacated for panel re-hearing*, 2025 WL 1794428, *appeal dismissed,* No. 23-2568 (Aug. 26, 2025), specifically rejected that argument. *Mukwonago*, 140 F.4th at 833 ("Our decisions in *Whitaker* and *Martinsville* did not turn on the plaintiffs' ages, hormone treatments, or medical conditions."). That the decision was later vacated does not deprive it of persuasive value, *see Christianson v. Colt Indus. Operating Corp.*, 870 F.2d 1292, 1298–99 (7th Cir. 1989), especially since the Court was interpreting its own prior opinions.

Lastly, Plaintiff misreads *Whitaker* and *Martinsville* as recognizing a longstanding constitutional right to sex-segregated "intimate spaces" designed to protect "female students' bodily privacy." (C.G. Resp. 6–8). The Seventh Circuit has rejected that characterization. In *Martinsville*, the Court specifically rejected the argument that the privacy interest in protecting students in segregated spaces is a "long protected" constitutional interest. *Martinsville*, 75 F.4th at 763. Moreover, consistent with that reasoning, courts in this Circuit have repeatedly rejected claims that inclusive restroom or locker room policies infringe upon the privacy rights of other students. See *Whitaker*, 858 F.3d at 1039; *Martinsville*, 75 F.4th at 772–74; *Students & Parents for Privacy v. U.S. Dep't of Educ.*, No. 16-CV-4945, 2017 WL 6629520, at *6 (N.D. Ill. Dec. 29, 2017) (holding that allowing transgender students access to facilities consistent with their gender identity does not infringe the privacy rights of other students). These decisions make clear that conjectural privacy

concerns about the presence of transgender students in shared facilities do not establish a constitutional violation. Accordingly, Plaintiff's attempt to rely on *Whitaker* and *Martinsville* as support for privacy rights in sex-segregated spaces and the exclusion of transgender students from facilities based on sex assigned at birth is inconsistent with the reasoning of those decisions.

### 3. Plaintiff's Theory Sounds in Privacy, Not Equal Protection.

Evident from the misuse of *Whitaker* and *Martinsville*, Plaintiff's real claim seems to be that the policy violates the Equal Protection Clause because it allegedly undermines "female students' bodily privacy." (C.G. Resp. 6). But privacy concerns do not establish a claim for sex discrimination under the Equal Protection Clause. *See Students & Parents for Privacy.,* No. 16-CV-4945, 2017 WL 6629520, at *5-6 (plaintiffs' constitutional right to privacy claim relating to transgender student access to facilities analyzed as substantive due process claim). To the extent Plaintiff asserts privacy interests in restroom or locker room use, those claims arise – if at all – under substantive due process rather than the Equal Protection Clause. Here, Plaintiff does not allege that she has been denied access to facilities based on her sex. Rather, she objects to the presence of another student in those facilities. That allegation does not plausibly establish sex-based discrimination in violation of the Equal Protection Clause.

### 4. Plaintiff's Conclusory Allegations Cannot Overcome the Policy's Plain Sex-Neutral Language.

Finally, Plaintiff's Equal Protection claim fails because her allegations are contradicted by the policy itself. Plaintiff asserts that the District treats female students differently and subjects them to unequal treatment. (FAC ¶¶ 16, 59). But the policy's language demonstrates that it applies equally to all students and does not treat any student differently based on sex. Courts are not required to accept legal conclusions or allegations contradicted by documents referenced in the complaint and central to the plaintiff's claims. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465

(7th Cir. 2010) (court is not required to accept as true a legal conclusion couched as a factual allegation); *Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013) (when exhibit or document incorporated in a complaint contradicts the allegations in the complaint, the exhibit or document controls, "even when considering a motion to dismiss."). Because the policy's plain language refutes Plaintiff's conclusory allegations of discrimination, Plaintiff fails to state a plausible Equal Protection claim.

For these reasons and those outlined in District's Motion, Plaintiff's Equal Protection claim should be dismissed.

**B. Title IX**

Plaintiff's Title IX claim fails for the same fundamental reason as her Equal Protection claim: the FAC does not plausibly allege she was excluded from any educational program or denied access to any facility on the basis of sex. To state a Title IX claim, a plaintiff must allege: (1) that she was excluded from participation in or denied benefits of or subjected to discrimination in an educational program; (2) that program receives federal financial assistance; and (3) that the exclusion was on the basis of sex. *Ludlow v. Nw. Univ.,* 125 F.Supp.3d 783, 791-92 (N.D. Ill. 2015) (citation and quotation omitted). Plaintiff fails to plausibly allege the first and third elements. The FAC does not allege Plaintiff was denied access to any restroom, locker room, or other educational facility. Instead, Plaintiff challenges the District's policy allowing students to use facilities consistent with their gender identity. Because the policy does not deny Plaintiff access to facilities or treat her differently based on sex, it does not plausibly constitute discrimination under Title IX.

*1. Title IX Permits—But Does Not Require—Sex-Segregated Facilities*

Plaintiff attempts to avoid this deficiency by arguing Title IX affirmatively protects sex-segregated "intimate spaces" and that the District's policy improperly withdraws those protections.

(C.G. Resp. 6–8). That argument misreads the statute.

Title IX provides that "[n]othing contained in this chapter shall be construed *to prohibit* any educational institution receiving funds under this Act from maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686 (emphasis added). The statute therefore permits—but does not require—educational institutions to maintain separate facilities. The Department of Education's implementing regulations confirm the same principle. Schools "*may* provide separate toilet, locker room, and shower facilities on the basis of sex," provided those facilities are comparable. 34 C.F.R. § 106.33 (emphasis added). Thus, contrary to Plaintiff's assertions, Title IX and related regulations demonstrate that sex-segregated facilities are allowed— not mandated. Accordingly, Title IX's allowance of separate facilities does not create an affirmative statutory right to exclude students from facilities based on sex assigned at birth. Nor does it prohibit schools from adopting policies that permit students to use facilities consistent with their gender identity.

### 2. *Seventh Circuit Precedent Confirms That Inclusive Access Policies Do Not Violate Title IX.*

The Seventh Circuit has already rejected the argument that Title IX requires restroom policies based solely on biological sex. In *Martinsville*, the court concluded that bathroom-access policies *excluding* individuals based on gender identity likely violate Title IX, notwithstanding 34 C.F.R. § 106.33. 75 F.4th at 770. Thus, Title IX's authorization of sex-separated facilities does not foreclose policies that allow transgender students to access facilities consistent with their gender identity. Plaintiff's interpretation would invert that principle by transforming a permissive provision into a mandatory one.

### 3. *The District's Policy Treats All Students Equally*

The District's policy applies equally to all students. In Plaintiff's terms, the policy allows

"biological males" to use the girls' locker room and "biological females" to use the boys' locker room if those facilities align with the students' gender identities. Under that policy, every student—including Plaintiff—has access to facilities that correspond with their gender identity. Because the policy does not restrict facility access for one sex while permitting it for another, Plaintiff cannot plausibly allege disparate treatment on the basis of sex. *See Valley View Cmty. Unit Sch. Dist. 365U*, No. 25-CV-09112, 2025 WL 2785372, at *6 (no violation of Title IX where policy guaranteed all students equal rights under the statute).

### 4. *Plaintiff's Allegations Sound in Privacy Concerns, Not Sex Discrimination*

Finally, as with her Equal Protection claim, the allegations in the amended complaint confirm that Plaintiff's theory is based on privacy concerns rather than discrimination on the basis of sex. (FAC ¶¶ 3, 17, 35, 45–46, 49). As noted above, such theories have been regularly dismissed by courts. *See Whitaker*, 858 F.3d at 1048-50; *see also Students & Parents for Privacy,* No. 16-CV-4945, 2017 WL 6629520, at *6. Specifically, in the Title IX context, the Seventh Circuit in *Martinsville* concluded that privacy concerns asserted by cisgender students did not justify restroom policies excluding transgender students, explaining that the presence of a transgender student in a gender-affirming facility did not threaten the asserted privacy interests and that inclusive access policies do not increase misconduct in restrooms or locker rooms. 75 F.4th at 773-74. Plaintiff's allegations therefore do not plausibly establish that she was subjected to discrimination on the basis of sex.

For these reasons and those outlined in District's Motion, Plaintiff's Equal Protection claim should be dismissed.

## II. Plaintiff Fails to State a *Monell* Claim Against the District.

Plaintiff's § 1983 claim against the District fails because the FAC does not plausibly allege

municipal liability under *Monell v. Dep't of Social Servs*, 436 U.S. 658 (1978). A municipality may be held liable under § 1983 for its own constitutional violations only under limited circumstances. *First Midwest Bank Guardian of Estate of LaPorta v. City of Chi.,* 988 F.3d 978, 986 (7th Cir. 2021) (quoting *Monell,* 436 U.S. at 690-91). To establish municipal liability, a plaintiff must allege that a constitutional violation was caused by: (1) an official policy; (2) a practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell,* 436 U.S. at 690). In addition, the challenged policy must have been adopted with deliberate indifference to constitutional rights and must have been the moving force behind the alleged violation. *First Midwest Bank*, 988 F.3d at 987. Plaintiff's *Monell* claim fails for two independent reasons.

### A. Plaintiff Fails to Allege an Underlying Constitutional Violation.

Municipal liability under § 1983 cannot exist in the absence of an underlying constitutional violation. Because Plaintiff fails to state a plausible Equal Protection claim, her *Monell* claim necessarily fails as well. As outlined in Section I and in the District's Motion, the challenged policy is facially neutral and does not discriminate based on sex. Because the policy does not violate the Equal Protection Clause, it cannot serve as the basis for municipal liability under *Monell.*

### B. Plaintiff Fails to Plausibly Allege Deliberate Indifference.

Even if Plaintiff had plausibly alleged a constitutional violation—which she has not—the FAC still fails to state a *Monell* claim because it contains no factual allegations showing deliberate indifference. Deliberate indifference requires more than negligence or a failure to act. *Flores v. City of South Bend*, 997 F.3d 725, 729 (7th Cir. 2021). Rather, a municipality must have actual knowledge that its conduct is substantially likely to result in a constitutional violation and

nevertheless disregard that risk. *Id.* The FAC contains no such allegations. To the contrary, Plaintiff alleges that the District's policy was adopted in reliance on "non-regulatory guidance from the State of Illinois." (FAC ¶ 10). That guidance—of which the Court may take judicial notice, see *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022)—indicates that students must be allowed to use the facilities that correspond with their gender identity. (District MTD 2-3). Thus, according to Plaintiff's own allegations, the District adopted its policy in reliance on publicly available state guidance and in a manner consistent with existing Seventh Circuit precedent. Such allegations do not plausibly support a claim that the District acted with deliberate indifference to constitutional rights.

### C. Plaintiff's Reliance on *Glisson* Misconstrues That Decision.

Plaintiff argues a municipality cannot avoid § 1983 liability by pointing to state recommendations if the policy it adopted causes a constitutional violation. (C.G. Resp. 9–10). But the case Plaintiff cites—*Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372 (7th Cir. 2017)—demonstrates the opposite.

In *Glisson*, the Indiana Department of Correction was aware of recommended state guidelines regarding coordinated healthcare but consciously chose not to implement them, which the court described as a "deliberate policy choice." *Id.* at 379-80. Here, by contrast, Plaintiff alleges that the District adopted a policy consistent with state guidance and with existing law. That allegation demonstrates the District's conscious effort to comply with governing standards, not deliberate indifference to constitutional rights.

Plaintiff has not pled any facts suggesting the District's equal access policy was adopted with deliberate indifference towards students' constitutional rights or that the policy was implemented because of any adverse effect on "biologically female" students. Because Plaintiff

fails to plausibly allege an underlying constitutional violation or deliberate indifference, the FAC does not state a viable claim for municipal liability under § 1983. Count I should therefore be dismissed.

## **Conclusion**

For the foregoing reasons, as well as those set forth in its Motion (Doc. 39), Defendant Deerfield Public Schools District 109 respectfully requests this Court grant its Motion to Dismiss Counts I and II of Plaintiff's FAC and award any other relief deemed just and proper.


Dated: March 13, 2026             Respectfully submitted,

DEERFIELD PUBLIC SCHOOLS
DISTRICT 109


By: ___*/s/ Susan Best*_____
      *One of its Attorneys*


Susan Best (#6302403)
Jessica Petrovski (#6339513)
Laura Knittle (#6313257)
**Gordon Rees Scully Mansukhani LLP**
1 N. Wacker Drive, Suite 1600
Chicago, IL 60606
Tel: (312) 565-1400
sjbest@grsm.com
jpetrovski@grsm.com
lknittle@grsm.com

Chris Gair (#6190781)
Ingrid Yin (#6339857)
**Gair Gallo Eberhard LLP**
1 E. Wacker Drive, Suite 2600
Chicago, IL 60601
Tel: (312) 600-4900
cgair@gairgallo.com
iyin@gairgallo.com

## <u>CERTIFICATE OF SERVICE</u>

I, Susan J. Best, an attorney of record, hereby state that on March 13, 2026, I electronically filed the forgoing document using the Court's CM/ECF Filing System, which will send electronic notice to all counsel of record.

By: <u>*/s/ Susan J. Best*</u>

Ajay Gupta
ajguptaemail@gmail.com
2849 Bond Circle
Naperville, Illinois 60563
Tel: (630) 854-7194
*Attorney for Plaintiff*